*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0436p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DERRICK E. HARPER,

　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

　　　No. 03-2081

AUTOALLIANCE INTERNATIONAL, INC., AAI EMPLOYEE
SERVICES CO., L.L.C., JEFFREY KELLY, and ALLEN
CHILDRESS,

　　　　　　　　*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-73317—Robert H. Cleland, District Judge.

Argued and Submitted: September 15, 2004

Decided and Filed: December 16, 2004

Before: BOGGS, Chief Judge; CLAY, Circuit Judge; HAYNES, District Judge.[*]

_____

### COUNSEL

_____

**ARGUED:** Laura A. Brodeur, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, Carlos F. Bermudez, ASSOCIATE GENERAL COUNSEL, INTERNATIONAL UNION, UAW, Detroit, Michigan, for Appellees. **ON BRIEF:** Satch U. Ejike, LAW OFFICES OF SATCH EJIKE, Ferndale, Michigan, for Appellant. Laura A. Brodeur, William D. Sargent, Cameron J. Evans, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, Carlos F. Bermudez, ASSOCIATE GENERAL COUNSEL, INTERNATIONAL UNION, UAW, Detroit, Michigan, for Appellees.

_____

### OPINION

_____

　　　CLAY, Circuit Judge. Plaintiff Derrick E. Harper appeals the July 17, 2003 order of the district court, denying his motion to remand this case to the Wayne County Circuit Court and granting summary judgment in favor of Defendants AutoAlliance International, Inc., AAI Employee Services Co., L.L.C., Jeffrey Kelly, and Allen Childress on his claims for retaliatory discharge, in violation of the Michigan Worker's Disability Compensation Act of 1969, MICH. COMP. LAWS § 418.301(11); retaliatory discharge

_____

[*]　The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

1

in violation of Michigan's Elliot-Larson Civil Rights Act, MICH. COMP. LAWS § 37.2101; and abuse of process against Defendants Kelly and Childress.  For the reasons that follow, we **AFFIRM** the district court's order.

**I.**
*Background*

A.     **Substantive Facts[1]**

Plaintiff Derrick E. Harper ("Harper") began working for Mazda Motor Manufacturing, which later became AutoAlliance International, Inc. ("AutoAlliance") when Mazda formed a joint venture with Ford Motor Company, on September11, 1989. In 1997, Harper's employment was transferred from AutoAlliance to AAI Employee Services Co., L.L.C. ("AAI").  At the time of the transfer, Harper understood that, as a member of the United Automobile Workers' Union ("UAW"), the conditions and terms of his employment were governed by the collective bargaining agreement ("CBA") between Ford and the UAW.  The CBA authorizes AAI to implement certain work rules, such as AAI's rules against theft, which are at issue in this case.  Defendants claim that Harper was discharged for violating AAI's rules against theft.

Defendants' explanation for Harper's discharge is based upon a March 8, 2000 incident in which Harper allegedly stole a cellular phone from a co-worker at AAI's Flat Rock, Michigan Manufacturing facility.  Harper was suspended on March 14, 2000, pending an investigation into the incident.  On March 21, 2000, after conducting an investigation, AAI terminated Harper's employment for theft.  That same day, Defendant Jeffrey Kelly of UAW Local 3000 filed a grievance on Harper's behalf.  Kelly turned the grievance into union representative Robert Taylor, who signed it and immediately presented it to AAI's employee relations department.  On May 11, 2001, the union withdrew the grievance because it "believed it could not successfully arbitrate the grievance."  Harper did not invoke his right under the CBA to appeal the grievance withdrawal.

Also on the day of his termination, Harper filed an unfair labor practice charge with Region 7 of the National Labor Relations Board ("Board"), alleging that the union had failed and refused to represent him. The Board dismissed the charge on August 7, 2001.  Harper appealed the dismissal to the Board's general counsel's office on August 24, 2001, but he was denied relief.

B.     **Procedural History**

On June 28, 2002, Harper, an African-American, filed a complaint in Wayne County Circuit Court against Defendants AutoAlliance, AAI, Kelly, and Allen Childress, a supervisor at AutoAlliance's facility in Flat Rock, Michigan.  Harper alleged that Childress gave preferential treatment to non-minority staff, and that after Harper filed a grievance and then a charge with the Equal Employment Opportunity Commission ("EEOC"), Childress retaliated against him by imposing unfavorable working conditions.  Harper further alleged that Kelly retaliated against him by refusing  to "process, present, and espouse Plaintiff's labor grievances to the full extent of company policy."  Harper claimed that, following his successful claim for worker's compensation benefits stemming from a back injury, AutoAlliance and AAI retaliated by subjecting him to various unfavorable working conditions and to the "untrue and convenient allegation" that Harper had stolen the cellular telephone of co-worker Terry Stevens.  According to Harper's complaint, his termination for theft was "a pretext for Defendants' actual retaliatory motive and actions against Plaintiff for Plaintiffs' EEOC complaint and Worker's Compensation claim, both in 1998."  Moreover, after his termination, Kelly and Childress, acting on their purported "animus and malice" for Harper, allegedly

---

[1]The following undisputed facts are taken, largely verbatim, from the district court's July 17, 2003 order denying Plaintiff's Motion to dismiss and remand and granting Defendants' motion for summary judgment.

continued to conspire to harass and intimidate Harper by obtaining multiple personal protection orders against him.**2**

Premised on the above factual allegations, Harper's complaint stated the following claims: (1) retaliatory discharge, in violation of the Michigan Worker's Disability Compensation Act of 1969, MICH. COMP. LAWS § 418.301(11); (2) retaliatory discharge in violation of Michigan's Elliot-Larson Civil Rights Act, MICH. COMP. LAWS § 37.2101; (3) retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a); and (4) abuse of process against Kelly and Childress for having obtained personal protection orders against Harper for "ulterior and improper purposes." Harper served Kelly on July 24, 2002 and AutoAlliance, AAI, and Childress on July 25, 2002.

On August 14, 2002, AutoAlliance, AAI and Childress filed a notice of removal of Harper's complaint to the United States District Court for the Eastern District of Michigan. The notice of removal asserted subject matter jurisdiction on the basis of federal question jurisdiction, given that Harper's complaint alleged a federal Title VII claim. The notice also asserted that some or all of Harper's state law claims were preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). Defendant Kelly did not sign the notice of removal, which was executed only by counsel for AutoAlliance, AAI, and Childress. However, the body of the notice stated, "Counsel for AutoAlliance, AAI and Childress has obtained concurrence from counsel for the UAW, who represents defendant Jeffrey Kelly, in removing this matter." In addition, on August 21, 2002, Kelly answered the complaint and asserted "that the proper jurisdiction and venue for this case is the U.S. District Court for the Eastern District of Michigan, Southern Division."

On August 28, 2002, Harper moved to remand the case to Wayne County Circuit Court. Harper argued that the notice of removal was invalid because Kelly did not join in the removal action and because his claim under the Michigan Worker's Disability Compensation Act is not removable under 28 U.S.C. § 1445(c). Defendant Kelly opposed Harper's motion to remand on September 19, 2002, noting that he had provided his consent and joined the notice of removal filed by AutoAlliance, AAI, and Childress.

The court denied Harper's motion to remand, finding that all of the defendants had joined the notice of removal and that the court had supplemental jurisdiction under 28 U.S.C. § 1367(a) over Harper's state law claims, which were part of the same case or controversy as the federal Title VII claim. The court further held that removal was proper notwithstanding 28 U.S.C. § 1445(c), which prohibits the removal of a civil action "arising under the workmen's compensation laws" of a state. Although the Michigan Worker's Disability Compensation Act prohibits retaliation, the court held that Harper's claim of retaliation for violating this public policy did not arise under that Act.

On November 26, 2002, upon stipulation of the parties, Harper filed an amended complaint that deleted the Title VII claim. Thereafter, Defendants answered Harper's amended complaint, the parties filed a plan for discovery and other pre-trial matters, and then engaged in discovery. During the discovery period, the district court granted one motion to compel, denied another, and granted a motion for protective order. On May 1, 2003, after the completion of discovery, Defendants filed a motion for summary judgment, to which Harper subsequently responded.

On May 7, 2003, almost a week after the dispositive motion cutoff date, Harper filed a motion to dismiss and remand for lack of subject matter jurisdiction. The district court denied Harper's second motion to remand and granted Defendants' summary judgment motion. The court rejected Defendants' argument that Harper's state law claims were preempted by § 301 of the LMRA, holding that only state law claims

---

**2** Kelly and Childress obtained personal protection orders against Harper after an NLRB representative informed AutoAlliance that Harper had told her, "Well, you know, from the way that things have happened and transpired of me losing my job over a cell phone,… it's like the guy at the post office, you know, some people get so depressed and so stressed that they go out and they do things."

remained in the case. Nevertheless, the court held that it was proper to continue to exercise jurisdiction over the case to avoid delay and conserve judicial resources. The court then proceeded to address Harper's state law claims on the merits, finding that Harper could not establish either a *prima facie* case of retaliation or that Defendant's explanation for his discharge was a pretext for discrimination. The court also found that Harper could not establish an abuse of process claim based solely on allegations of Childress and Kelly's alleged harassing phone calls.

Harper filed a notice of appeal with respect to the July 17, 2003 district court order denying his motion to dismiss and remand and granting Defendants' motion for summary judgment. Harper has not challenged the district court's dismissal of his complaint on the merits. Rather, he has limited his argument to the district court's assertion of subject matter jurisdiction over his complaint and the court's failure to remand the case to the Wayne County Circuit Court.

## II.

### A.    Standard of Review

This Court reviews the district court's refusal to remand a removed action under a *de novo* standard. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 759 (6th Cir. 2000); *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 338 (6th Cir. 1989). A district court's decision to exercise supplemental jurisdiction over state law claims that are related to the federal question claim is reviewed only for abuse of discretion. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1192 (6th Cir. 1993).

### B.    Analysis

#### 1.    Validity of the Notice of Removal

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A civil action founded on a claim based on a federal statute may be removed regardless of the citizenship of the parties. *Id.* § 1441(b). Whenever a federal claim is joined with "one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." *Id.* § 1441(c). However, "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." *Id.* § 1445(c).

To remove a civil action from state court to federal court, the following pleading requirements must be met: (1) the defendant or defendants must file in the district court a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, along with a copy of all pleadings and orders served upon the defendant or defendants; and (2) the notice of removal must be filed within 30 days of receiving the complaint or summons, whichever period is shorter, or within 30 days of receiving an amended pleading, motion, order, or "other paper" from which the removability of the action may first be ascertained. 28 U.S.C. § 1446(a), (b). There is no dispute that Defendants AutoAlliance, AAI and Childress filed a timely notice of removal on August 14, 2002. The asserted bases for removal were the federal claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) and the preemption of some or all of Harper's state law claims by § 301 of the LMRA. The notice included the following statement:

> Counsel for AutoAlliance, AAI and Childress has obtained concurrence from counsel for the UAW, who represents defendant Jeffrey Kelly, in removing this matter.

The notice of removal was signed by counsel for AutoAlliance, AAI and Childress, but not Kelly's counsel.

The district court properly found that it had original jurisdiction over Harper's complaint because his Title VII claim clearly arose under federal law. 28 U.S.C. § 1441(b). Harper, however, challenged the removal as noncompliant with the so-called "rule of unanimity" because Defendant Kelly purportedly did not properly and timely consent to the removal. "The rule of unanimity requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal." *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999).

Harper argues that the statement of Defendant Kelly's concurrence in the other defendants' notice of removal did not comply with the rule of unanimity because 28 U.S.C. § 1446(a) states that a notice of removal must be signed pursuant to Rule 11 of the Federal Rules of Civil Procedure, but that Rule 11 "does not authorize any one party to make representations or file pleadings on behalf of another party." *Pl's Br.* at 9. We disagree. Rule 11 merely requires any pleading to be signed "by at least one attorney of record" and states that by presenting such pleading the attorney is certifying that, *inter alia*, "the allegations and of the factual contentions have evidentiary support." FED. R. CIV. P. 11(a), (b)(3). Thus, the attorney for AutoAlliance, AAI and Childress was bound by Rule 11 when she represented to the district court that Kelly consented to the removal. Nothing in Rule 11, however, required Kelly or his attorney to submit a pleading, written motion, or other paper directly expressing that concurrence or prohibited counsel for the other defendants from making such a representation on Kelly's behalf. Had counsel for AutoAlliance, AAI and Childress misrepresented Kelly's concurrence in the removal, no doubt Kelly would have brought this misrepresentation to the court's attention and it would have been within the district court's power to impose appropriate sanctions, including a remand to state court.

Even assuming, *arguendo*, that the statement of concurrence in the notice of removal did not satisfy the rule of unanimity because Kelly needed to file a written concurrence on his own behalf, it is clear that Kelly complied with the rule when he filed his answer within 30 days of being served with the complaint. Harper's complaint was personally served on Kelly on July 24, 2002. In his answer, filed on August 21, 2002, Kelly stated, "Defendant Kelly asserts that the proper jurisdiction and venue for this case is the U.S. District Court for the Eastern District of Michigan, Southern Division." Thus, the district court correctly concluded that Kelly's answer complied with the rule of unanimity. In addition, the fact that Kelly subsequently opposed Harper's motion to remand cured any purported defect in the removal petition. *Cf. Gafford v. General Elec. Co.*, 997 F.2d 150, 164 (6th Cir. 1993) ("If and to the extent that GE's petition for removal was technically deficient in its assertion of its principal place of business, it was cured by subsequent information GE supplied to the district court and entered into the record of this case."); *Klein v. Manor Healthcare Corp.*, No. 92-4328/4347, 1994 WL 91786, at **5 (6th Cir. Mar. 22, 1994) (rejecting the plaintiff's argument that the defendants' failure to include all defendants in a removal petition could not be cured beyond the 30-day removal period).

### 2.     Impact of Harper's Retaliatory Discharge Claim on Removability

The next issue is whether Harper's civil action was removable because his complaint contained a claim for retaliatory discharge that invoked the Michigan Worker's Disability Compensation Act of 1969, MICH. COMP. LAWS § 418.301(11). For that reasons that follow, we hold that Defendants properly removed this action.

A civil action "arising under the workmen's compensation laws of [a] State" cannot be removed to a federal district court. 28 U.S.C. § 1445(c). The question is how to interpret the terms "arising under" and "workmen's compensation laws" with respect to retaliatory discharge claims premised on Michigan law. In answering this question, we apply federal law criteria. *Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 705 (1972).

### a.    "Arising Under"

When interpreting § 1445(c), we are guided by the fact that Congress invoked the identical "arising under" language when it enacted the federal question jurisdiction statute, which provides that "[t]he district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. *Cf. Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 829-30 (2002) (holding that "'[l]inguistic consistency'" required that the same "arising under" test be applied to the jurisdictional statute for patent claims, 28 U.S.C. § 1338(a), as is used for the general federal jurisdiction statute, 28 U.S.C. § 1331) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988)).

According to the Supreme Court, a case "arises under" federal law in "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983). This was the commonly understood definition of "arising under" at the time of § 1445(c)'s passage in 1958. *See American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) (holding that libel and slander suit that involved statements concerning plaintiff's patent for a pump arose under state law, not federal patent law: "A suit arises under the law that creates the cause of action."). Applying the definition of "arising under" from § 1331 to the closely-related removal statute yields the following definition: A civil action arises under a state workmen's compensation law when either (1) the workmen's compensation law created the cause of action or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of workmen's compensation law.

### i.    Law that created the retaliation cause of action

Michigan's Worker's Disability Compensation Act provides that an employee who receives a personal injury arising out of and in the course of employment with a covered employer shall be paid specified wage loss benefits and medical services and is entitled to medical rehabilitation services. MICH. COMP. LAWS §§ 418.301(1), 418.315(1), 418.319. The Act specifies a remedial scheme for making a worker's compensation claim and for resolving disputes over benefits through a summary administrative procedure. *Id.* §§ 418.381-385, 418.801, 418.841, 418.853. The Act also makes it unlawful for an employer to "discharge an employee or in any manner discriminate against an employee" because the employee filed a complaint or instituted a proceeding under the Act or because of the employee's exercise of a right afforded by the Act. *Id.* § 418.301(11). Unlike a claim for benefits or medical services, however, the Act fails to specify a remedy for retaliation or even a means to enforce the right to be protected from retaliation. *Cf. id.* § 418.1065 (specifying prohibition against retaliation for filing a claim under the Michigan Occupational Safety and Health Act and also providing a detailed administrative scheme for remedying retaliation claims).

But employees who suffer retaliation for exercising their rights under the workmen's compensation statute are not without a remedy. The Michigan courts have recognized a common law exception to Michigan's employment at will doctrine for discharges that violate public policy. *See Suchodolski v Mich. Consolidated Gas Co.,* 316 N.W.2d 710, 712 (Mich. 1982) (*per curiam*) (holding that an at-will employee may have a cause of action for wrongful discharge "when the reason for a discharge was the employee's exercise of a right conferred by a well-established legislative enactment") (citing *Sventko v. Kroger Co.*, 245 N.W.2d 151 (Mich. Ct. App. 1976); other citation omitted).

Even before the Michigan legislature incorporated an explicit prohibition against retaliation into the Michigan's Worker's Disability Compensation Act, the Michigan Court of Appeals had held that a discharge for exercising rights under the Act gives rise to a cause of action for wrongful discharge in violation of public policy. *Sventko*, 245 N.W.2d at 153 ("[A]n employer at will is not free to discharge an employee when the reason for the discharge is an intention on the part of the employer to contravene the

public policy of this state. That the workmen's compensation statute does not directly prohibit a retaliatory discharge by employers does not hinder this opinion."). Subsequently, the Michigan Supreme Court placed its imprimatur on this specific cause of action and held that a prevailing plaintiff is entitled to tort-based remedies, such as damages for lost wages and emotional distress. *Phillips v. Butterball Farms Co., Inc.*, 531 N.W.2d 144, 150 (Mich. 1995).

In *Delke v. Scheuren*, 460 N.W.2d 324 (Mich. Ct. App. 1990) (*per curiam*), the plaintiff argued that the Act's anti-retaliation provision, MICH. COMP. LAWS § 418.301(11), evidenced a legislative intent to treat retaliatory discharge as a form of personal injury compensable under the statute. *Id.* at 326. He further argued that the state administrative body responsible for awarding benefits under the Act, the Bureau of Workers' Disability Compensation, had jurisdiction to hear his claim that his employer had fired him for filing a worker's compensation claim because (1) the Act gives the Bureau jurisdiction over, *inter alia*, "'all questions arising under this act,'" *id.* (quoting MICH. COMP. LAWS § 418.841(1)) and (2) his retaliatory discharge claim "arises under" the Act. *Id.* The court disagreed, holding that there was not "sufficient evidence of legislative intent to so create an administrative remedy for retaliatory discharge," because (1) the Act authorizes compensation only for individuals who are "disabled," not non-disabled victims of retaliation; (2) "the fact-finding involved in a retaliatory discharge action would go beyond the range of the bureau's or the [Workers' Compensation Appeal Board's ('WCAB')] expertise"; and (3) "the bureau and the WCAB would be unable to award the equitable remedies customarily sought in a retaliatory discharge action, such as reinstatement and back pay." *Id.* at 327.

The holding in *Delke* is strong evidence that the retaliatory discharge claim for exercising rights under Michigan's worker's compensation statute does not arise under that statute. The Act not only fails to provide a remedy for such claims, but, according to the Michigan courts, retaliation claims do not even pose a question that arises under the Act.

Harper counters the retaliatory discharge claim does arise under the Act because the Michigan Supreme Court has noted that the right against retaliatory discharge for filing a worker's compensation claim stems from public policy "now expressed in a statute." *Phillips*, 531 N.W.2d at 147; *see also id.* at 148 ("The right [to protection against retaliatory discharge for filing a worker's compensation claim] stems not from an implied promise by the employer, but from the statute."). The *Delke* decision makes clear, however, that the Michigan's legislature's incorporation of an anti-retaliation provision into the Act does not mean that a retaliation claim arises under that statute, let alone provides a remedy. The legislature added an anti-retaliation provision in 1981 merely to codify the judicially-created right against wrongful discharge for filing a workmen's compensation claim previously announced in *Sventko*, *supra*. *Delke*, 460 N.W.2d at 327; *see also Phillips*, 531 N.W. 2d at 148 ("In enacting § 301(11) of the Worker's Disability Compensation Act, the Legislature codified *Sventko*.").

In this sense, the common law right to be free from retaliatory discharge does not arise under Michigan's worker's compensation statute, but is merely reflected in it. *See Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1092 (5th Cir. 1991) ("[W]hether a state has codified a statute as part of its workers' compensation chapter does not determine whether a claim filed under that statute is one 'arising under the workers' [sic] compensation laws' for the purpose of section 1445(c)."); *cf. Patin v. Allied Signal, Inc.*, 77 F.3d 782, 789 (5th Cir.1996) (holding that claims for the breach of the duty of good faith and fair dealing against worker's compensation insurance carrier did not "'arise under' the state workers' compensation statutes but are, at most, 'related to' those statutes and thus do not come within the ambit of the non-removability provision of § 1445(c)"; good faith and fair dealing claims were created by Texas common law, not by the compensation statute).

ii.      **Whether a retaliation claim necessarily depends on resolution of a substantial question of workmen's compensation law**

Harper's retaliation claim also does not arise under Michigan's Worker's Disability Compensation Act according to the second "arising under" definition because the claim does not necessarily depend on resolution of a substantial question under that statute. The retaliation claim does not implicate the administrative or remedial mechanisms of that statutory scheme, require courts to interpret the statute, or seek an award of compensation for personal injury that causes a diminished wage-earning capacity, which is the only type of compensation that the statute affords, MICH. COMP. LAWS § 418.301(1), (4). *See Thornton v. Denny's Inc.*, No. 92-1368, 1993 WL 137078, at *2 (6th Cir. Apr. 29, 1993) (*per curiam*) (holding that claim for retaliatory discharge premised on Michigan's worker's compensation statute does not arise under that law because the "statute provides neither the mechanisms nor the remedy for this type of suit").[3] As the Seventh Circuit explained regarding a similar tort-based retaliation claim under Illinois law, "[a] claim of retaliatory discharge may be adjudicated without any inquiry into the meaning of the workers' compensation laws; the question for decision usually is the employer's motive for adverse action rather than the entitlement to compensation for injury on the job." *Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722, 725 (7th Cir. 1994).

b.      **"Workmen's Compensation Laws"**

The next question is whether Michigan's wrongful discharge cause of action for violating the anti-retaliation public policy is itself a "workmen's compensation law[]." If so, the claim would not be removable.

As noted above, the federal question jurisdiction statute uses similar language as § 1445(c), providing that the district courts shall have original jurisdiction in actions "*arising under the …laws …*of the United States." 28 U.S.C. § 1331 (emphasis added). Construing this language, the Supreme Court has held, "Federal common law as articulated in rules that are fashioned by court decisions are 'laws' as that term is used in § 1331." *Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (citations omitted). Based on *Nat'l Farmers*, it might be argued that Congress intended § 1445(c), which prevents the removal of civil actions "*arising under the* workmen's compensation *laws* of [a] State," to reach not only statutory enactments of a state's workmen's compensation law, but also common law extensions of those enactments, such as through judicially-created exception to a state's employment at-will doctrine for retaliation claims premised on a worker's compensation statute. *E.g.*, *Thompson v. Cort Furniture Rental Corp.*, 797 F. Supp. 618, 621-22 (W.D. Tenn. 1992). According to this argument, but for the existence of the worker's compensation statute, there would be no common law wrongful discharge action.

Nearly 90 years ago, Justice Holmes, writing for the Supreme Court, addressed a similar argument and rejected it. In *American Well Works*, *supra*, a pump manufacturer sued a competitor in state court for libel and slander after the competitor allegedly made statements suggesting that the plaintiff's pump infringed on the defendant's pump and the defendant began to file lawsuits against parties who were using the plaintiff's pump. 241 U.S. at 258. The defendant removed the case to federal court on the ground that the action arose under federal patent law. *Id.* The Court held that removal was improper, reasoning as follows:

> A suit for damages to business caused by a threat to sue under the patent law is not itself a suit under the patent law. And the same is true when the damage is caused by a statement of fact, – that the defendant has a patent which is infringed. What makes the defendants' act a wrong is its manifest tendency to injure the plaintiff's business; and the wrong is the same

---

[3] Unpublished opinions of this Court are not binding authority, but nevertheless can be persuasive authority. *Agnew v. BASF Corp.*, 286 F.3d 307, 310 n.3 (6th Cir. 2002) (citing *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001)).

whatever the means by which it is accomplished. But whether it is a wrong or not depends upon the law of the state where the act is done, not upon the patent law, and therefore the suit arises under the law of the state. A suit arises under the law that creates the cause of action. The fact that the justification may involve the validity and infringement of a patent is no more material to the question under what law the suit is brought than it would be in an action of contract.… The state is master of the whole matter, and if it saw fit to do away with actions of this type altogether, no one, we imagine, would suppose that they still could be maintained under the patent laws of the United States.

*Id.* at 259-60.

Justice Holmes's words clarify that, for a state common law cause of action to arise under a federal statute, there must be more than a relationship between the two. Moreover, just because the common law cause of action (*e.g.*, libel or slander) would be eviscerated by the elimination of the statute on which the suit is premised (*e.g.*, patent law), it does not follow that the cause of action arises under that statute.

As a corollary, just because there is a "but for" relationship between Michigan's worker's compensation statute and the common law cause of action for retaliation in violation of public policy, it does not follow that the common law tort claim arises under that statute. As the Seventh Circuit opined in *Spearman*, "That workers' compensation law is a premise of the tort does not mean that the tort 'arises under' the workers' compensation laws, any more than a state tort based on the violation of a federal safety standard 'arises under' that standard for purposes of the federal question jurisdiction in 28 U.S.C. § 1331." *Spearman*, 16 F.3d at 725 (citation omitted); *see also id.* ("[I]f there were no copyright laws, there could be no dispute about who owns a copyright. Yet it is settled that a dispute about the ownership of a copyright arises under state rather than federal law.") (citation omitted).

After the Michigan legislature incorporated an anti-retaliation provision into the Worker's Disability Compensation Act , the statute still failed to specify an administrative or judicial remedy for retaliation or the type of relief that a plaintiff may obtain. The clear implication of this fact is that the legislature intended to express its approval of individuals using the judicially-crafted wrongful discharge cause of action to remedy retaliatory discharges. *Phillips*, 531 N.W. 2d at 148; *Delke*, 460 N.W.2d at 327. Accordingly, whether a retaliatory discharge is a wrong under Michigan law does not depend upon the worker's compensation statute, but upon the Michigan courts' recognition of an exception to the employment at-will doctrine for discharges that violate public policy.

If the Michigan courts ceased to permit public policy wrongful discharge actions generally, the remedy for retaliation for exercising rights under the worker's compensation statute would disappear, unless the courts subsequently recognized an implied cause of action for retaliation directly under the Worker's Disability Compensation Act . An independent statutory cause of action for retaliation also might arise if the legislature amended the Act so as to supersede the common law claim by creating an exclusive administrative mechanism for adjudicating these claims and/or circumscribing the available remedies. Under current Michigan law, however, the cause of action for retaliatory discharge in violation of the public policy to protect workmen's compensation claimants is not one of Michigan's "workmen's compensation laws," but merely one iteration of a common law tort that potentially applies to a myriad of different wrongs in the employment setting.

Some courts have adopted a test for removability of a workmen's compensation retaliation claim that focuses primarily on whether (1) the claim evades the state's summary administrative proceedings for benefit claims and (2) a prevailing plaintiff is entitled to tort-based remedies. In *Spearman*, the Seventh Circuit discussed the legislative history of § 1445(c) which notes that "[n]early all of the State statutes on workmen's compensation provide summary proceedings for the expeditio[u]s and inexpensive settlement of claims by injured workmen against the employer." 16 F.3d at 724 (quoting S. REP. NO. 1830 (1958) (hereafter "LEGISLATIVE HISTORY"), *reprinted in* 1958 U.S.C.C.A.N. 3099, 3106). Based on the legislative

history, the court reasoned that "[a] fault-based regime with common law damages is not a 'workmen's compensation law[.]'" *Id.* at 725.[4] The court then held that a tort-based wrongful discharge claim premised on Illinois' worker's compensation law, but that does not utilize the statute's enforcement mechanism or limited remedial scheme, is not a "workmen's compensation law" and, therefore, is removable under § 1445(c). *Id.* at 724-26.

It is well-established that, when interpreting statutes, courts should not "resort to the legislative history" if the statutory language is straightforward. *United States v. Gonzales*, 520 U.S. 1, 6 (1997). Here, the term "workmen's compensation laws" is straightforward. Such laws establish a scheme for compensating employee's injured on the job, but the extent and character of that scheme varies by state. Indeed, Congress was aware that state workmen's compensation schemes were not uniform when it enacted § 1445(c), noting that, as of 1958, "*[n]early*" all of the states had administrative schemes in place for handling compensation claims. LEGISLATIVE HISTORY, 1958 U.S.C.C.A.N. at 3106 (emphasis added). Congress knew that the states might afford, then or in the future, different kinds of remedies and/or mechanisms for handling these claims. Thus, contrary to *Spearman*'s conclusion, the legislative history does not necessarily reveal a congressional intent to permit removal whenever a plaintiff alleges a fault-based claim and seeks to recover more than lost wages or medical benefits stemming from a personal injury.

What is clear in the legislative history is that Congress enacted § 1445(c) to reduce congestion in the federal district courts. *Horton v. Lib. Mut. Ins. Co.*, 367 U.S. 348, 350-51 (1961); *see also* LEGISLATIVE HISTORY, 1958 U.S.C.C.A.N. at 3105 ("In a number of States the workload of the Federal courts has greatly increased because of the removal of workmen's compensation cases from the State courts to the Federal courts."). An interpretation of § 1445(c), such as the Seventh Circuit's, which automatically deems tort-based retaliation claims to be removable appears more likely to expand the federal courts' dockets than an approach that deems such claims removable only if their existence is not dependent upon a remedial scheme set forth in a worker's compensation statute. Congress easily could have used more specific language to prohibit the removal of only non-benefit, non-fault-based, claims, but it did not.[5]

Thus, rather than resorting to an ambiguous legislative history, the more logical course is to focus on whether the existence of the worker's compensation retaliation claim is necessarily dependent upon the administrative mechanisms and/or remedies of the applicable worker's compensation statute. *Cf. Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1245-46 (8th Cir. 1995) (holding that a claim for retaliatory discharge premised on Missouri's worker's compensation law "arises under" that law for purposes of § 1445(c) because anti-retaliation provision also authorized the filing of a civil action for damages; the anti-retaliation right established by the Missouri worker's compensation statute "is an essential element of plaintiff's claim"). For the reasons discussed above, such retaliation claims under Michigan law are removable

---

[4] After examining the history of workers' compensation laws, the Fourth Circuit concluded that, at the time of § 1445(c)'s enactment, "the typical state act included the following features: (1) negligence and fault of the employer and employee were immaterial to recover, (2) common law suits against the employer were barred, (3) medical expenses were capped at a percentage of the employee's wage, (4) an administrative agency ran the system with relaxed rules of procedure to facilitate prompt compensation, and (5) state court review of agency decisions occurred on a deferential basis." *Arthur v. E.I. DuPont de Nemours & Co.*, 58 F.3d 121, 125 (4th Cir. 1995.) Similar to the Seventh Circuit's definition, the Fourth Circuit held that "the ordinary (shorthand) meaning of 'workmen's compensation laws' in 1958 was this: a statutorily created insurance system that allows employees to receive fixed benefits, without regard to fault, for work-related injuries." *Id.*

[5] *Cf. Horton*, 367 U.S. at 352 (holding that the plain language of the diversity jurisdiction statute permitted a workmen's compensation claim to be filed as an original action in federal court, even though Congress clearly intended to prohibit the removal of such claims: "Congress used language specifically barring removal of such cases from state to federal courts and at the same time left unchanged the old language which just as specifically permits civil suits to be filed in federal courts in cases where there are both diversity of citizenship and the prescribed jurisdictional amount. In this situation we must take the intent of Congress with regard to the filing of diversity cases in Federal District Courts to be that which its language clearly sets forth. Congress could very easily have used language to bar filing of workmen's compensation suits by the insurer as well as removal of such suits, and it could easily do so still.")

because their existence is not necessarily dependent upon the procedures or remedies provided by the Worker's Disability Compensation Act.

### 3. Supplemental Jurisdiction over Harper's State Law Claims.

After determining that it had subject matter jurisdiction over Harper's Title VII claim, the district court chose to exercise supplemental jurisdiction over Harper's state law claims and denied Harper's first motion to remand. We hold that the district court did not abuse its discretion.

In any action in which the district court has original jurisdiction, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Claims form part of the same case or controversy when they "derive from a common nucleus of operative facts." *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996).

Harper's claim under Michigan's Elliot-Larson Civil Rights Act, MICH. COMP. LAWS § 37.2701, like his Title VII claim, was premised on the identical allegation that Defendants retaliated against him for filing a complaint of race discrimination with the EEOC. Similar to the Title VII retaliation claim, Harper's abuse of process claim and his claim of retaliation for filing a worker's compensation claim related to facts precipitating or arising out of his termination; the complaint alleged that the "animus and malice" that led to his retaliatory termination also motivated Defendant Kelly and Childress's decision to seek personal protection orders against Harper. Because these claims shared the same nucleus of operative facts, the district court did not abuse its discretion in exercising supplemental jurisdiction over them.

After the district court denied Harper's first motion to remand, Harper amended his complaint to eliminate the Title VII claim, leaving only the state law claims. Defendants argue that, even after Harper dismissed his Title VII claim, the district court had original federal question jurisdiction because Harper's state law claims were pre-empted by § 301 of the LMRA. Defendant Kelly argues that Harper's retaliatory discharge claims require interpretation of the applicable collective bargaining agreement, in particular, an assessment of whether Defendant Kelly mishandled his grievance over his termination. According to Kelly, "[s]uch an assessment requires interpretation of the agreement." We disagree.

It is undisputed that theft is a dischargeable offense under the CBA and that Harper had certain grievance rights thereunder. But Harper's retaliation claims were not "inextricably intertwined" with the meaning of these CBA provisions. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985) (holding that question of whether a state law tort claim was pre-empted by the LMRA focused on "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract"). Harper needed to prove only that the ostensible reason for his termination – theft of a co-worker's cell phone – was a pretext for retaliation for exercising his rights under the anti-discrimination laws and in contravention of Michigan's public policy against retaliation for exercising worker's compensation rights. At most, the terms of the CBA were relevant background for Harper's termination.

For these reasons, Harper's state law claims for retaliation, which were independent of the CBA, were not pre-empted by § 301 of the LMRA. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) (holding that the factual questions underlying the tort of retaliatory discharge for filing a worker's compensation claim, including whether the employer had a nonretaliatory reason for the discharge, would not "require[] a court to interpret any term of a collective-bargaining agreement" and would "not turn on the meaning of any provision of a collective-bargaining agreement"); *Smolarek v. Chrysler Crop.*, 879 F.2d 1326, 1331, 1334 (6th Cir. 1989) (en banc) (holding that plaintiff's retaliatory discharge claim under Michigan law was not preempted because "the state-law tort of retaliatory discharge creates rights independent of those established by the collective bargaining agreement"; further holding that discrimination claim was not preempted even though the employer was likely to rely on provisions of the CBA in its defense); *Jones*, 931 F.2d at 1090 ("Roadway may have had other reasons, even reasons which

the CBA justified, for dismissing Jones.  But if retaliation was a factor, then for the purposes of Jones'…
claim [for retaliation in violation of Texas' worker's compensation law], an interpretation of the CBA is not
inextricably intertwined with the state-law claim.").

It follows that no federal question remained in the case once Harper dismissed his Title VII claim.
The remaining question is whether the district court properly retained supplemental, or "pendent,"
jurisdiction over Harper's remaining state law claims.

"Generally, 'if the federal claims are dismissed before trial, ... the state claims should be dismissed
as well.'" *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine
Workers v. Gibbs,* 383 U.S. 715, 726 (1966)) (other citation omitted).  Dismissal is not mandatory, however,
because supplemental jurisdiction "'is a doctrine of discretion, not of plaintiff's right.'" *Id.* (quoting *Baer
v. R & F Coal Co.,* 782 F.2d 600, 603 (6th Cir.1986) (quoting *Gibbs,* 383 U.S. at 726)) (other citations
omitted.)  *See also Rosado v. Wyman*, 397 U.S. 397, 405 (1970) ("We are not willing to defeat the
commonsense policy of pendent jurisdiction – the conservation of judicial energy and the avoidance of
multiplicity of litigation – by a conceptual approach that would require jurisdiction over the primary claim
at all stages as a prerequisite to resolution of the pendent claim.").

Harper argues that the filing of his amended complaint, without the Title VII claim, deprived the
district court of subject matter jurisdiction over his remaining state law claims because the amendment
"related back" to the filing date of his first complaint, thereby depriving the court of original federal
question jurisdiction (and thus supplemental jurisdiction) from the inception of the case.  *See* FED. R. CIV.
P. 15(c) (providing that "[a]n amendment of a pleading relates back to the date of the original pleading"
under certain circumstances).  Harper's argument is wrong as a matter of law.

The existence of subject matter jurisdiction is determined by examining the complaint as it existed
at the time of removal.  *See Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 758 (6th Cir. 2000) (holding
that the district court was not divested of subject matter jurisdiction upon the dismissal of the plaintiff's
federal claims) (citing *In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980) for the following proposition:

"It is a fundamental principle of law that whether subject matter jurisdiction exists is a
question answered by looking to the complaint *as it existed at the time the petition for
removal was filed.*... When a subsequent narrowing of the issues excludes all federal claims,
whether a pendant [sic] state claim should be remanded to state court is a question of judicial
discretion, not of subject matter jurisdiction."

(emphasis added; citations omitted in *Long*)).  Accordingly, because the district court's jurisdiction
originally was premised on a federal claim and that claim subsequently was dismissed, remand to the state
court was a matter of discretion.

"'A trial court must balance the interests ... when deciding whether to resolve a pendent state claim
on the merits.'" *Id.* (quoting *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412 (6th Cir.1991)
(quoting *Province v. Cleveland Press Publishing Co.,* 787 F.2d 1047, 1055 (6th Cir.1986)).  "A district court
should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance
those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182 (quoting
*Aschinger*, 934 F.2d at 1412).  The court also may consider whether the plaintiff has used "manipulative
tactics" to defeat removal and secure a state forum, such as "simply by deleting all federal-law claims from
the complaint and requesting that the district court remand the case." *Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343, 357 (1988) ("If the plaintiff has attempted to manipulate the forum, the court should take this
behavior into account in determining whether the balance of factors to be considered under the pendent
jurisdiction doctrine support a remand in the case.").

In *Taylor*, this Court affirmed the district court's retention of supplemental jurisdiction under the
following facts:

> Here, the interests of judicial economy and fairness both favored the district court's retention of jurisdiction. First, this case had been on the district court's docket for almost two years. Second, the parties had completed discovery and compiled a voluminous record. Third, plaintiffs' federal claim was *not* abandoned until the filing of the amended complaint. Fourth, an extensively briefed summary judgment motion was ripe for a ruling by the district court. Thus, as remand could have wasted judicial resources and resulted in additional delay, the district court's discretion was *not* abused in denying the motion to remand.

*Taylor*, 973 F.2d at 1288 (emphasis in original). *Taylor* is virtually on point: This case had been on the district court's docket for a substantial amount of time (11 months); the parties had completed discovery; Harper did not abandon his federal claim until he filed his amended complaint; and Defendants' summary judgment motions were ripe for decision. In addition, the court had made several substantive rulings, including on Harper's initial motion to remand, Harper's motion for protective order, and Defendant AAI and Childress's motion to compel an independent medical examination. Thus, the district court was familiar with the facts of the case and already had invested significant time in the litigation. *See* J.A. 103 ("This matter has been pending on the court's docket for nearly one year, court-supervised discovery has been completed, the court has gained significant insight regarding this case through earlier motions and communications with counsel, and two summary judgment motions filed by Defendants are fully briefed and ripe for decision.").

There also was evidence that Harper was attempting to engage in forum manipulation. It was only after the district court had denied his first motion to remand that Harper dropped his Title VII claim. Then, Harper did not immediately move for remand, but instead proceeded with his remaining claims in federal court for almost six months more. Only after discovery had been completed, the dispositive motion deadline had passed, and Harper was faced with dismissal of all of his claims on summary judgment, did he again seek remand to the state court. We agree with the district court that "[s]uch timing appears suspicious and raises questions about Plaintiff's motives in seeking remand." Accordingly, we hold that the district court did not abuse its discretion in retaining supplemental jurisdiction over Harper's state law claims.

### III.

For all the foregoing reasons, we **AFFIRM** the July 17, 2003 order of the district court, denying Plaintiff's motion to remand this case to the Wayne County Circuit Court and granting summary judgment in favor of Defendants.