**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0577n.06

No. 16-4112

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 11, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BASISTA HOLDINGS, LLC; DAVID J. LEWIS, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| ELLSWORTH TOWNSHIP; MICHAEL P. KURILLA, JR.; DIANE DUDEK; KURT MORRISON; FRED HOUSTON; FRED SCHROCK; ISHRAQ HAFIZ; MARY ANN STACK; WAYNE SARNA; WILLIAM SPELLMAN; RICK DURKIN, | ) ) ) ) ) ) ) ) | **OPINION** |
| Defendants-Appellees. | ) ) ) | |

BEFORE: NORRIS, SUHRHEINRICH, and GRIFFIN, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge**. This appeal arises from a zoning dispute involving an 18-acre property located on State Route 45 in Ellsworth Township, Mahoning County, Ohio ("the Property"). Plaintiff Basista Holdings, LLC is a limited liability company whose owner and sole member is plaintiff David J. Lewis. In 2007, Basista Holdings sought a zoning certificate for a permit to use the Property as a cement batch plant and rental storage facility, which requires an industrial zoning designation. Although defendant Diane Dudek, formerly the Ellsworth Township Zoning Inspector, initially granted the application, she later disavowed it, explaining that she had issued it in error. This litigation ensued.

## I.

The parties have stipulated that in 1969, Ellsworth Township adopted a zoning resolution that included a zoning map. This map reflected the existence of an industrial district on State Route 45. The district had a frontage of 871 feet and a depth of 500 feet.

The Property consists of 17.998 acres. Basista Holdings purchased it on May 20, 2003. At the time of purchase, the Property consisted of two parcels. The first parcel had a frontage of 900 feet on State Route 45, and a depth of 435.6 feet east of State Route 45; the second parcel had the same measurements and was located directly behind the first. They were consolidated into a single parcel in 2007.

On July 24, 2007, approximately four years after purchase of the Property, Basista Holdings submitted an application for a zoning certificate to defendant Dudek to allow for industrial use of the entire parcel, which after consolidation had a frontage of 900 feet and a depth of approximately 871 feet. Ms. Dudek approved the application by letter dated September 14, 2007. She reported the approval to the Ellsworth Township trustees at a meeting held on October 8, 2007. The minutes of the meeting state, "The Lewis industrial site plan was approved."

On April 7, 2008, attorney Charles Dunlap wrote to Ms. Dudek. He indicated that he represented Paul and Laura Lyden, who owned property adjacent to the parcel owned by Basista Holdings. According to Dunlap, the prior industrial designation approved by Dudek was issued in error.

Receiving no response, Dunlap filed suit in the Mahoning County Court of Common Pleas on behalf of the Lydens, naming as defendants Basista Holdings, David Lewis, the Ellsworth Township Zoning Inspector and its trustees, as well as the Ohio Department of Natural

2

Resources. The complaint alleged that the Lydens owned land that shared a common boundary with the Property. The Property's prior owner, the East Fairfield Coal Company, had operated the site as a coal tipple until 1970. That use left the Property polluted and subject to reclamation under Ohio and federal environmental laws. According to the complaint, if the proposed use of the land by Basista Holdings were to occur, the polluted soil would be excavated (much of it was buried during reclamation) and a stream common to both properties would be degraded. The complaint also alleged that the 1969 zoning ordinance designated the Property as agricultural but allowed for a non-conforming use by its then-owners, the East Fairfield Coal Company.

In the course of this litigation, defendant Dudek was deposed. Among other things, she stated that she believed at the time of the Basista Holdings application in July 2007 that the Property had always been zoned as industrial but realized that she had made a mistake when she received the letter from Mr. Dunlap. She also conceded that she did not know the proper procedure for revoking a permit once it had been issued. Nor did she send Basista Holdings a letter revoking the permit.

Although the Lyden lawsuit was dismissed by plaintiffs on September 16, 2009, from 2007 to 2012, Paul and Laura Lyden submitted several complaints to Ellsworth Township stating that Basista was maintaining the SR 45 Property in violation of the Ellsworth Township Zoning Ordinance."

Laura Lewis, who was not only David Lewis's wife but also an authorized representative of Basista Holdings, served on the Ellsworth Township Board of Trustees in 2011. At the suggestion of Ellsworth Township's legal counsel, Michael Kurilla was retained as deputy zoning inspector to investigate the zoning complaints against Basista and David and Laura Lewis because of Laura Lewis's service on the board of trustees.

On September 1, 2011, Kurilla issued two notices of zoning violations to Basista with regard to its use of the SR 45 Property and the Gault Road Property. The latter property was transferred to Laura Lewis in 2015 and is not at issue in this appeal. Basista Holdings appealed Kurilla's finding of zoning violations and also, in 2012, submitted a revised site plan, which was denied on October 10, 2012. This denial was also appealed. These appeals were later dismissed by Basista Holdings.

On October 31, 2012, Kurilla, in his capacity as Ellsworth Township Deputy Zoning Inspector, filed a complaint against Basista Holdings for zoning violations in the Mahoning County Court of Common Pleas. Basista Holdings filed a counterclaim seeking declaratory judgment relating to the zoning classification of the SR 45 Property, injunctive relief, and monetary damages, as well as claiming violations of the Ohio Open Meetings Act. The counterclaim was bifurcated for purposes of trial, which was held before a magistrate on March 23, 2015. The magistrate issued a decision on April 8, 2015, finding that the depth of the Industrial District was 500 feet. Basista Holdings objected and a hearing was held before a Common Pleas Court Judge who affirmed the magistrate and dismissed the objections. This decision is currently before the Ohio Court of Appeals.

Basista Holdings initiated this litigation on August 27, 2014, by filing a complaint in the Mahoning County Court of Common Pleas which essentially tracked the claims included in its earlier unsuccessful counterclaim: Count I requested a declaratory judgment under Ohio Rev. Code § 2721.03; Count II prayed for injunctive relief under Ohio Rev. Code § 2727.02; Count III sought money damages under 42 U.S.C. § 1983 for unconstitutional deprivation of Basista Holdings, LLC's use of its property; and Count IV alleged a violation of the Ohio Open

4

Meetings Act, Ohio Rev. Code § 121.22. Defendants removed the action to federal court based upon the inclusion of a federal civil rights claim.

Defendants filed a motion for summary judgment below, which the district court granted on the basis that plaintiffs' suit was untimely. In Ohio, causes of action premised upon 42 U.S.C. § 1983 are subject to a two-year statute of limitations. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855-56 (6th Cir. 2003). That period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 856 (quoting *Khunle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). In this instant case, the parties stipulated as follows:

> In furtherance of the litigation in *Paul Lyden v. David Lewis*, a deposition was taken of Diane Dudek in May of 2009. At that deposition, Basista's representatives, David and Laura Lewis, learned that it was Ms. Dudek's position that she had made an error in sending the September 14, 2007, letter approving the site plan. It had been brought to Ms. Dudek's attention that the official Zoning Map reflected the Industrial district on State Route 45 had a depth of only 500 feet, and she was therefore retracting her prior approval.

Based upon this stipulation, the district court concluded that plaintiffs should have known of their injury in May 2009 and, because the complaint was not filed until August 27, 2014, it exceeded the statute of limitations. Even if the date of Mr. Kurilla's notices of zoning violations were used to trigger notice, that date—November 28, 2011—would still fall outside the two-year limit.

Based upon its conclusion with respect to the statute of limitations, the court granted judgment to defendants on counts I through III. With respect to Count IV, the alleged violation of the Ohio Open Meetings Act, it held that defendants were entitled to judgment because plaintiffs failed to produce any triable issue as to the Ohio Open Meetings Act claim. Count IV has not been appealed.

## II.

<u>Standard of Review</u>

This court reviews the grant of summary judgment de novo while drawing all inferences in favor of the non-moving party. *Savage v. Fed. Express Corp.*, 856 F.3d 440, 446 (6th Cir. 2017).

*1. Did Plaintiffs' Complaint Run Afoul of the Statute of Limitations Governing § 1983 Actions?*

Plaintiffs provide us with two reasons why the district court erred when it held that the statute of limitations barred relief.

*A. The Permit Approved by Ms. Dudek was Never Revoked*

In her deposition, Ms. Dudek testified that she placed the Basista Holdings zoning application on the agenda of the Zoning Commission, which approved it. She also confirmed that, to her knowledge, the property was always zoned as industrial. And, as recounted earlier, she later realized that she had made a mistake in granting the permit but failed to send plaintiffs a letter revoking it. The parties stipulated that "Basista did not receive any other documentation relating to the July 24, 2007, permit application."

Basista Holdings draws the following conclusion from this scenario: "[I]f the Zoning Commission's permission for approval was necessary to grant the permit it is only reasonable to assume that permission would likewise be necessary for the Zoning Commission to revoke the permit." Appellant Brief at 37. In other words, because neither Ms. Dudek nor the Zoning Commission formally revoked approval of Basista Holdings' permit, it remains in force. That being the case, the statute of limitations never began to run.

While creative, this line of argument is not availing to plaintiffs. The statute of limitations began to run when plaintiffs first knew, or should have known, of their injury. *Trzebuckowski*,

319 F.3d at 856. Here, as the district court held, the notice of injury—the revocation of their zoning permit—was received when Mr. and Mrs. Lewis attended Ms. Dudek's deposition in May 2009. Whether or not the permit issued by Ms. Dudek was initially valid and, if so, whether it remained so absent its revocation by either her or the Zoning Commission, is not relevant. The key inquiry is whether plaintiffs had reason to know that their permit was being rescinded by the issuing authorities. Since that was the case, they were on notice that their legal interests were at risk and the statute of limitations clock began to run.

### B. The Continuing Violations Exception

The Ellsworth Township Board of Trustees adopted a zoning amendment on July 2, 2015, that directly affected the Property. In plaintiffs' view, the amendment added restrictions to the property that were not in the 1969 zoning ordinance.

Basista Holdings characterizes the 2015 amendment as a "continuing violation." Such violations toll the running of the statute of limitations. *Trzebuckowski*, 319 F.3d at 857 (citing *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)). To establish a continuing violation, plaintiffs are required to present "some evidence of present discriminatory activity giving rise to a claim of continuing violation." *Id.* (quoting *Dixon*, 928 F.2d at 216). Plaintiffs contend that the two-year statute of limitations was restarted when the zoning amendment was passed in July 2015, because it constituted a "deprivation of property," which is precisely the constitutional tort that the § 1983 count alleges.

For several reasons, we conclude that the continuing violation doctrine does not apply here. First, plaintiffs did not plead a continuing violation or otherwise raise this issue with the district court. Accordingly, we need not consider this argument. *See Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 430 (6th Cir. 2016) ("It is well-settled that this [C]ourt will

7

not consider arguments raised for the first time on appeal unless [the] failure to consider the issue will result in a plain miscarriage of justice."). Second, this court uses this doctrine "most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Katz v. Vill. of Beverly Hills*, 677 F. App'x 232, 236 (6th Cir. 2017) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003)). Third, a plaintiff can establish a continuing violation only if he shows a "longstanding and demonstrable policy of discrimination." *Sharpe*, 319 F.3d at 268. "This requires a showing by a preponderance of the evidence that some form of intentional discrimination against the class of which plaintiff was a member was the . . . standing operating procedure." *Id.* at 267 (quoting *Burzynski v. Cohen*, 264 F.3d 611, 618 (6th Cir. 2001)). The plaintiff "must demonstrate something more than the existence of discriminatory treatment in his case." *Id.* at 268 (quoting *Haithcock v. Frank*, 958 F.2d 671, 679 (6th Cir. 1992)). Plaintiffs do not meet this burden.

The district court's dismissal of this claim as time-barred is affirmed.

### *2. Did the District Court Err When it Rendered Judgment on Plaintiffs' State-Law Claims?*

In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the "values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). This court reviews the district court's finding that it has supplemental jurisdiction (i.e., its "same case or controversy" finding) de novo, and its decision to exercise that jurisdiction for abuse of discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). Jurisdiction in this context is determined at the time of removal. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). At time of removal here, the district court had original jurisdiction over the § 1983 claim, "and thus could exercise supplemental jurisdiction over the accompanying state

law claims so long as those claims constitute 'other claims that . . . form part of the same case or controversy.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting 28 U.S.C. § 1367(a)). Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

The district court did not undertake this analysis in any great detail, but its conclusion was correct. Plaintiffs requested a declaratory judgment seeking clarification of their property rights under Ohio law and the Ellsworth Township Zoning Ordinance. They also sought, pursuant to Ohio Revised Code § 2727, an order enjoining any zoning inspector from enforcing the ordinance against them. The district court found that these claims, and the § 1983 claim for monetary damages, all related to plaintiffs' allegation that they "have been prevented from using [their] real property in conformity with the September 14, 2007 zoning permit, approved site plan, and the existing Zoning Ordinance." Accordingly, the three claims necessarily implicated "the zoning classification of Plaintiffs' property and the scope of Plaintiffs' rights related to its use for industrial purposes."

The district court's reasoning is sound. These claims are linked in that they all arise out of the same core disputes—whether the Property has been misclassified; and if so, whether defendants interfered with plaintiffs' proper use of their property. Both questions are relevant to whether declaratory and injunctive relief is appropriate, and to whether plaintiffs should be awarded monetary damages under § 1983. Resolving whether to grant relief on any of these claims necessarily requires, then, a threshold determination of what the zoning map and ordinances provide—in other words, whether the Property is correctly zoned. Indeed, the state

court trial on plaintiffs' declaratory judgment claim in the first action addressed whether, and to what extent, the Property was zoned for industrial use. And the question for purposes of supplemental jurisdiction is not whether these claims *have* to be considered together, but whether they *could* be. Although it isn't a perfect fit, these claims aren't so unrelated as to compel the conclusion a plaintiff would not "ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725. In short, the district court had supplemental jurisdiction.

Once the § 1983 claim was dismissed, however, the district court had the discretion to decline to exercise its supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996); *see also* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it ha[d] original jurisdiction").

There are, however, circumstances where a district court should retain supplemental jurisdiction even if all of the underlying federal claims have been dismissed. In *AutoAlliance International, Inc.*, for example, this court found that several factors weighed in favor of retaining supplemental jurisdiction over the remaining state-law claims in that case, including that the parties had completed discovery, and the defendants' summary judgment motions were ripe for decision. 392 F.3d at 211. Moreover, the district court "was familiar with the facts of the case and already had invested significant time in the litigation." *Id*. This court therefore concluded that the district court had properly exercised supplemental jurisdiction over the remaining state-law claims. *Id*. at 212.

These factors all weigh in favor of exercising jurisdiction here. The district court spent nearly two years with this case, dismissing plaintiffs' claims only after discovery and on a motion for summary judgment ripe for adjudication. In the interim, the district court made substantive rulings, addressing defendants' motion to compel discovery, plaintiffs' motions for an extension of time to file responses, plaintiffs' motion to dismiss their complaint without prejudice and their motion to withdraw that motion, plaintiffs' motion to amend their complaint, and plaintiffs' motion to stay proceedings and remand. In state court, this case proceeded no further than service on the defendants and their removal of the action to federal court. Whereas here, the district court was very invested in this case, and was undoubtedly familiar with the parties, the facts, and the claims.

Supplemental jurisdiction is "a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie–Mellon Univ.*, 484 U.S. at 350. Here, the district court had supplemental jurisdiction, and did not abuse its discretion in exercising it.

Turning to the resolution of these claims, under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted). When evaluating whether a state court judgment bars further claims in a federal forum, "[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Because defendants argue that the Ohio state court's decision precludes plaintiffs' claims, this court analyzes the preclusive effect of that decision under Ohio law.

In *Grava v. Parkman Township*, the Ohio Supreme Court held that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." 653 N.E.2d 226, 229 (Ohio 1995). In *Hapgood v. City of Warren*, this court distilled *Grava's* holding into a four-element test for establishing res judicata under Ohio law. There must be:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood*, 127 F.3d 490, 493 (6th Cir. 1997) (citation omitted).

Here, the claims and parties are the same for all relevant purposes. Indeed, the claims are identical, and Ohio courts "have applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine" of res judicata. *Kirkhart v. Keiper*, 805 N.E.2d 1089, 1092 (Ohio 2004). "Thus, a mutuality of interest, including an identity of desired result, may create privity." *Id.* (internal quotation marks omitted). Plaintiffs do not contest these elements.

Further, there is a final, valid decision by the state court in the first action on the three claims plaintiffs raised here—indeed, the state court held a trial on the declaratory judgment claim and determined, as defendants maintain, that the Property was zoned for industrial use up to a depth of 500 feet. And in a subsequent 2015 review of a zoning board of appeals decision, the Court of Common Pleas declined to address Basista's declaratory judgment claim in light of the previous state court and federal court rulings on that issue. Plaintiffs' primary argument in response is that these cases are on appeal to the state appellate court. However, res judicata applies unless and until the Court of Common Pleas decisions are overturned. *U.S. ex rel.*

*Sheldon v. Kettering Health Network*, 816 F.3d 399, 415 (6th Cir. 2016) (applying Ohio law). And Ohio courts have recognized that "even incorrect judgments are entitled to preclusive effect." *Builders Dev. Grp., L.L.C. v. Smith*, No. 23846, 2010 WL 3448574, ¶ 14 (Ohio Ct. App. Sept. 3, 2010); *Fulton v. Roush*, 195 N.E. 262, at 263-64 (Ohio Ct. App. 1934) ("The rights of the parties having been therein fixed, and that order being in full force and effect, it cannot be upset by subsequent proceedings instituted in the same court after term, in spite of a contrary holding upon the law by a supreme tribunal.")

In sum, the remaining Ohio law causes of action are barred by the doctrine of res judicata.

### III.

The judgment of the district court is **affirmed**.