**Joanna GOIN, on behalf of herself and all those similarly situated, Plaintiffs,**

v.

**BASS PRO OUTDOOR WORLD, LLC, et.al., Defendant.**

No. 06–2093.

United States District Court, W.D. Tennessee, Western Division.

July 14, 2006.

Dan M. Norwood, David B. Stevenson, Jeffery Atchley, Norwood Howard & Atchley, Memphis, TN, for Plaintiff.

Bryce Bartlett, David R. Dyroff, Jr., Husch & Eppenberger, LLC, Gerard K. Rodriguez, St. Louis, MO, Jennifer Ziegenhorn, Husch & Eppenberger, Memphis, TN, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS

DONALD, District Judge.

Before the Court is the motion of Plaintiff to remand her action to the state court in which it was originally filed. On January 10, 2006, Plaintiff brought an action in the Circuit Court of Tennessee in Memphis, suing on behalf of herself and all those similarly situated for reprisal and or/retaliatory discharge for asserting workers' compensation rights. Defendants removed the action to federal court on February 15, 2006 on diversity grounds and moved to dismiss on February 23, 2006. On March 17, 2006, Plaintiff filed a motion for remand. For the reasons set forth herein, Plaintiff's motion for remand is granted and Defendants' motion to dismiss is denied as moot.

## I. BACKGROUND[1]

The four defendants in this case are Bass Pro Outdoor World, LLC; Bass Pro, Inc.; Three Johns Company; and Track-

---

1. The factual allegations presented herein are taken from Plaintiff's complaint and are presumed to be true for purposes of the instant motion only.

mar Corporation. All four are Missouri corporations. Plaintiff alleges that the four corporations operate as an integrated and/or joint employer under Tennessee law.[2] (Compl.¶ 4).

Plaintiff Joanna Goin ("Plaintiff" or "Goin") worked for Defendants at the Bass Pro Shops store in Bartlett, Tennessee from October 27, 2002 to April 8, 2005. *Id.* at 16, 41. She began her employment as Lead Apparel Associate and was later promoted to Group Sales Manager in charge of three store departments. *Id.* at 4. On November 23, 2003, Goin injured her elbow and knee in a work-related accident. *Id.* at 19. She filed a workers compensation claim the following day. *Id.* at 20.

Although she received treatment, Goin's condition worsened with time. *Id.* at 21. In May 2004, the employer's physician, Dr. Krahn, recommended surgery. *Id.* at 23. After her surgery, Goin underwent four weeks of physical therapy. *Id.* at 26. Upon completion of the therapy program, Dr. Krahn concluded that Goin had some permanent impairment of knee and elbow functioning, but allowed her to return to work in July 2004. *Id.* at 27–28.

In September, 2004, Goin obtained legal representation for the purpose of negotiating a workers' compensation settlement for the permanent injuries sustained on the job. *Id.* at 29. In the course of these negotiations, an independent medical examination was requested and obtained by Defendants. *Id.* at 30–32. This evaluation found that Goin had a permanent loss of functioning of 10% to the body as a whole. *Id.* at 33.

In January 2005, Goin claims that store management began subjecting her to "unequal terms and conditions of employment by, among other things, not making eye contact and intentionally not speaking to her." *Id.* at 35. She was reprimanded for "poor restocking of store merchandise," a charge she denies. *Id.* at 36. On March 11, she received a poor performance evaluation and was placed on a thirty-day performance plan. *Id.* at 37.

On April 5, 2005, in the course of a conference call between her attorney and Defendants' insurance carrier, Goin's attorney presented a settlement demand. *Id.* at 38. The carrier's representatives stated they would have to speak to Defendants' management to verify Plaintiff's loss of earnings and other information. *Id.* at 39. Three days later, prior to the end of Goin's thirty day performance plan, Goin was discharged for "poor job performance." *Id.* at 41.

On January 10, 2006, Plaintiff brought an action in state circuit court, suing on behalf of herself and all those similarly situated for reprisal and/or retaliatory discharge for asserting workers' compensation rights. Defendants removed the action to federal court on February 15, 2006 on diversity grounds and moved to dismiss on February 23, 2006. On March 17, 2006, Plaintiff filed a motion for remand, arguing that removal was contrary to 28 U.S.C. § 1445(c), which prohibits removal of certain civil actions.

## II. ANALYSIS

In Tennessee, the general rule that an employee at will can be discharged for any reason, or no reason at all, has long governed most employer-employee relationships. *See Chism v. Mid–South Milling Co.*, 762 S.W.2d 552 (Tenn.1988). The Tennessee Supreme Court created an exception to the rule in *Clanton v. Cain-*

---

**2.** Defendants deny this allegation, but offer little clarification as to the relationships between the companies. Defendants maintain that Defendant Bass Pro Outdoor World, LLC was Plaintiff's employer and that the other Defendants have never had any relationship with Plaintiff. (Memo in Support of Def.'s Mot. to Dismiss Class Action Compl. 1).

*Sloan Co.*, when it recognized a retaliatory discharge cause of action in a case involving an employee fired in retaliation for the employee's exercise of rights under the workers' compensation law. 677 S.W.2d 441 (Tenn.1984). The court reasoned that while such a cause of action was not explicitly created by the workers' compensation statute, it was necessary in order to realize the intent of the legislature in enacting the statute. *Id.* at 445. The court found this intent expressed in Tenn.Code Ann. § 50–6–114 which provides that "[n]o contract or agreement, written or implied, or rule, regulation *or other device*, shall in any manner operate to relieve any employer ... of any obligation created by [the workers' compensation statute]." (emphasis added). *Id.* The court concluded that a retaliatory discharge constitutes a "device" under the statute. *Id.* In *Harney v. Meadowbrook Nursing Center*, 784 S.W.2d 921, 922 (Tenn.1990), the court explained that *Clanton* had "merely recognized that implicit within the provisions of Tenn.Code Ann. § 50–76–114 a cause of action existed to prevent an employer from utilizing retaliatory discharge as a device to defeat the rights of an employee under the Workers' Compensation Law."

Although the *Clanton* and *Harney* decisions would seem to suggest that the Tennessee workers' compensation statute contains within it a narrow, implied cause of action for retaliatory discharge, subsequent decisions have suggested a somewhat different reading. Two years after *Clanton*, the court stated unequivocally that "a claim for damages for retaliatory discharge is not a part of a worker's compensation claim, but is a separate tort action." *Van Cleave v. McKee Baking Co.*, 712 S.W.2d 94, 95 (Tenn.1986). Similarly, in *Hodges v. S.C. Toof & Co.*, the court stated that *Clanton* had recognized a "common law tort action for retaliatory discharge." 833 S.W.2d 896, 899 (Tenn. 1992). Equally important, the court said

that "*Clanton* is not limited to retaliatory discharge actions arising from an employee's exercise of workers' compensation rights, but rather makes the tort action of retaliatory discharge available to employees discharged as a consequence of an employer's violation of a clearly expressed statutory policy." *Id.* at 899. This approach was echoed in *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn.1994), in which the court held that an action for retaliatory discharge is available whenever "the employer has violated a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision and the employer's violation was a substantial factor in the employee's discharge."

Thus, *Clanton* and its progeny have established a broad retaliatory discharge cause of action, liability for which requires that an employer be in violation of a clear public policy, evidenced by unambiguous constitutional, statutory or regulatory language. *Anderson v Standard Register Co.*, 857 S.W.2d 555 (Tenn.1993). Although the retaliatory discharge cause of action had its origins in a workers' compensation context, the court has extended its reach to numerous other contexts. This broad scope underscores the court's recognition that retaliatory discharge is a common law tort, rather than a statutorily created cause of action.

■ The question of retaliatory discharge's lineage is not merely academic. It takes on considerable importance in the context of removal of a workers' compensation related case to federal court. In general, a defendant may remove any civil action brought in a state court to federal district court as long as the district court possesses original jurisdiction. 28 U.S.C. § 1441(a). However, removal is prohibited for civil actions "arising under the workmen's compensation laws." 28 U.S.C.

§ 1445(c). The propriety of a defendants' removal of an action must then be determined by whether the action "arises under" the Tennessee's workers' compensation laws, which in turn hinges upon the legal source of the cause of action at issue.

In the face of considerable disagreement among the federal courts, the Sixth Circuit has recently attempted to devise a consistent and coherent approach to the application of § 1445(c)'s workers' compensation removal exception. Basing its analysis upon the Supreme Court's interpretation of the "arising under" language found in Article III, § 2 of the U.S. Constitution, the court in *Harper v. AutoAlliance Int'l., Inc.* defined a civil action arising under a state workmen's compensation law as one where either 1) the workmen's compensation law created the cause of action or 2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of workmen's compensation law. 392 F.3d 195, 203 (6th Cir.2004). *Harper* further states that common law which recognizes a "cause of action for retaliatory discharge in violation of the public policy to protect workmen's compensation claimants" does not itself constitute a "workmen's compensation law" within the meaning of 1445(c). *Id.* at 207.

In applying these standards to the retaliatory discharge claim before it, the court concluded that such a claim did not arise under Michigan's Worker's Disability Compensation Act and was therefore removable because the Act did not provide a remedy for such claims. "[T]he common law right to be free from retaliatory discharge does not *arise* under Michigan's worker's compensation statute, but is *merely reflected in it.*" (emphasis added). *Id.* at 204.

The Sixth Circuit Court has applied the *Harper* approach only once to a retaliatory discharge claim made under Tennessee law. In *Nixon v. Waste Management,*

*Inc.*, the court found that the plaintiff's retaliatory discharge action did not arise under the workers' compensation laws of Tennessee. 156 Fed.Appx. 784, 787 (6th Cir.2005) (unpublished table opinion). The court based its decision on its determination that the right of action was created not by the statute, but by the Tennessee Supreme Court as a broadly applicable common law tort. Therefore, removal was proper under 28 U.S.C. § 1445(c).

Both Plaintiff and Defendants acknowledge *Harper* as the governing authority in this case, but come to very different conclusions as to its proper application in the present case. Plaintiff Goin does not claim that the workers' compensation law created her cause of action, and thus concedes that she does not meet *Harper's* first test. Instead she asserts that she satisfies the second *Harper* test, i.e., that her right to relief necessarily depends on resolution of a substantial question of workers' compensation law. She argues that to adjudicate her claim the court will necessarily have to interpret the provisions of Tenn.Code Ann. § 50–6–114 in light of her novel legal claims. Specifically, she claims that the company policy of targeting employees who receive workers' compensation benefits as "problem" employees constitutes a "device" under § 50–6–114, separate from any specific retaliatory discharge. She further maintains that retaliation in forms other than discharge also constitutes a device under the statute. She argues that these novel legal theories have not yet been examined by the Tennessee courts and therefore the claims which they support are ineligible for removal under 28 U.S.C. § 1445(c).

Defendants maintain that Goin's claim is a run of the mill retaliatory discharge claim, and thus doesn't arise under the state workmen's compensation law under *Harper.* (Def's Memo. in Opp'n to Pl.'s

Mot. to Remand 5). Although this criticism would be true of Goin's individual claim standing alone, it does not do justice to the larger, class-action suit of which she is the putative representative plaintiff. The essence of that action is that the company's policy itself constitutes a "device" in violation of state law, as do retaliatory actions other than discharge. In asserting these legal theories, Plaintiff asks the court to chart new ground by extending the holding of *Clanton* beyond retaliatory discharge.

Defendants further argue that because Plaintiff's claim is for discharge alone, she cannot use the hypothetical claims of unnamed class members to defeat removal. (Def' s Memo. in Opp'n to Pl.'s Mot. to Remand 7). Plaintiff's complaint makes clear that she is claiming injury from Defendants' policy of reprisal, as expressed in "unequal terms of employment" and "unjustified" disciplinary measures leading up to her discharge. (Compl.¶¶ 35, 37). Having been the subject of a range of retaliatory measures, she is arguably a proper representative of the entire class injured by Defendants' alleged retaliatory policies and actions. The mere fact that she was discharged does not undermine her broader claims which she makes on her own behalf as well as on the behalf of others.

Again citing *Harper*, Defendants claim that Plaintiff's complaint is removable because it does not implicate "the administrative mechanisms and/or remedies" of the workers' compensation scheme. (Def's Memo. in Opp'n to Pl.'s Mot. to Remand 4). In *Harper's* discussion of its second test, the court lists three situations, not just one, where a claim would necessarily depend on resolution of substantial question of state workers' compensation law: "[t]he retaliation claim [ ][1] implicates the administrative or remedial mechanisms of that statutory scheme, [2] requires courts to interpret the statute, or [3] seeks an

award of compensation for personal injury that causes a diminished wage-earning capacity ..." By focusing exclusively on the first of these possibilities, and virtually ignoring the second, Defendants' have misrepresented *Harper* and arrived at a conclusion unsupported by that decision's actual text.

Finally, Defendants assert that Plaintiff is "simply suggesting an expansion of the common law." (Def's Memo. in Opp'n to Pl.'s Mot. to Remand 5). Defendants are correct that Plaintiff is suggesting an expansion of the common law, but incorrect in implying that Plaintiff suggests nothing more. For Plaintiff to prevail in her action, she must persuade the court to take two fairly momentous steps. She must first convince the court to expand and redefine the common law tort created in *Clanton* to encompass retaliatory acts other than the discharge presently recognized. This would represent a continuation of the broadening and refining of *Clanton* that the court has already engaged in on numerous occasions.

Second, the court would have to reexamine the term "device" in Tenn.Code Ann. 50–6–114, and determine that retaliatory acts short of discharge fall within its ambit. Such a determination would represent a significant change in state workers' compensation law, as interpreted by the court. It might well be described as a "resolution of a substantial question of workmen's compensation law," as set forth in *Harper's* second test. Unless the court is persuaded by Plaintiff's argument that "device" should be reinterpreted to encompass not only discharge but other acts and policies of employers intended as retaliation for the exercise of workers' compensation rights as well, Plaintiff has no right to relief.

By thus breaking down Tennessee's retaliatory discharge jurisprudence

into its two essential components, common law and statutory, analyzing the appropriateness of removal in a given case is relatively straightforward. If the retaliation at issue is expressly prohibited in a statutory scheme that does not itself create a right of action, or where the courts have found an implicit prohibition within such a scheme, then the civil action is removable since the right of action is created by common law and there is no unresolved issue of workers' compensation law. On the other hand, if a plaintiff presents a novel but compelling argument as to the proper interpretation of the state workers' compensation statute, or where the cause of action at issue is explicitly created by the statute, then the action "arises under" the statute and resolution of the matter should be kept within the domain of the state courts pursuant to § 1445(c).

The *Clanton* decision was the beginning of a long process of reinterpretation by the Tennessee courts, whereby the state's workers' compensation program and other legislative schemes have been protected from efforts to undermine them. Allowing the continued refinement of state law by state courts in such a specialized area of unique concern to the state is one of many reasons for honoring Congress's intent that workers' compensation claims remain in state court. *See* S.Rep. No. 85–1830 (1958), *as reprinted in* 1958 U.S.C.C.A.N. 3099, 3105–06. *See also Kay v. Home Indem. Co.*, 337 F.2d 898, 901 (5th Cir. 1964); *Allsup v. Liberty Mutual Ins. Co.*, 782 F.Supp. 325, 326 (N.D.Tex.1991). Plaintiff's proposed reinterpretation of the state statute may or may not have merit, but under § 1445(c) it is the state courts that must make the call.

## III. CONCLUSION

Removal of a state civil action arising under the workers' compensation statute is prohibited under 28 U.S.C. § 1445(c). Plaintiff's action necessarily requires the court to interpret the state's workers' compensation statute, and therefore it "arises under" the statute as that term was interpreted by the Sixth Circuit Court in *Harper v. AutoAlliance Int'l, Inc.* Accordingly, the removal of this action was contrary to § 1445(c).

For the reasons set forth herein, the Court hereby **GRANTS** Plaintiff's motion to remand the action to the Tennessee Chancery Court in which it was originally filed. The action having been thus remanded, Defendants' motion to dismiss is rendered moot and is therefore **DENIED.** The Clerk of the Court is directed to remand this matter forthwith.