IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 13, 2014 Session

**RICARDO TORRES**

**v.**

**PRECISION INDUSTRIES, P.I. INC. d/b/a PRECISION INDUSTRIES, TERRY HEDRICK and VICKI HEDRICK**

**Appeal from the Hardeman County Circuit Court**
**No. CC-12-CV-27    J. Weber McCraw, Judge**

---

**No. W2014-00032-COA-R3-CV - Filed August 5, 2014**

---

This appeal involves whether an unauthorized alien has standing to bring a retaliatory discharge claim. The appellant employee, an undocumented worker, alleged that the appellee employer terminated his employment as a direct result of the employee asserting a workers' compensation claim. The employer moved for summary judgment, arguing that the employee could not bring a claim for retaliatory discharge because he was not legally authorized to work in Tennessee or capable of performing the job from which he was fired. The trial court granted summary judgment based solely on the illegal status of the employee, concluding he was incapable of employment, and therefore, could not assert a claim for retaliatory discharge. We reverse, holding that the undocumented employee does have standing to bring a retaliatory discharge claim and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded**

PAUL G. SUMMERS, SR. J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Steven Wilson and John Feild, Memphis, Tennessee, for Plaintiff/Appellant Ricardo Torres

James L. Holt, Jr., Memphis, Tennessee for Defendant/Appellees Terry Hedrick, Vicki Hedrick, P.I., Inc. d/b/a/ Precision Industries

# OPINION

## FACTS AND PROCEEDINGS BELOW

The material facts in this case of first impression are undisputed. Defendant/Appellee Precision Industries ("Precision") is a Nevada based corporation owned and operated by Defendant/Appellees Terry and Vicki Hedrick (collectively "Defendants"). Defendants also operate a plant in Whiteville, Tennessee that manufactures parts for the automotive industry. In January 2011, Defendants hired Plaintiff/Appellant Ricardo Torres ("Torres") as a convertor builder at the plant; it is undisputed that during the time at issue in this appeal, Torres was not a U.S. citizen and not legally eligible to work in the United States.

Five months later, Torres injured his back while on the job; he informed Precision of this injury and sought medical treatment from a health care provider Precision selected. Apparently, issues arose regarding Torres' ability to collect workers' compensation for this back injury, prompting Torres to enlist the representation of an attorney, John Feild.

On September 7, 2012, Attorney Feild initially called Defendants seeking Precision's fax number. After this phone call, both Precision's safety manager and general manager unprofessionally confronted Torres about his workers' compensation claim and his decision to hire an attorney. Later that day, Torres was terminated. Torres' separation notice cited "lack of work" as the basis for termination.

In October 2012, Torres filed the instant complaint in the Hardeman County Circuit Court alleging "wrongful termination by retaliation for asserting a workers' compensation claim and use of an attorney to represent [Torres] in his workers' compensation claim." The Complaint alleged that Precision's managerial employees, "threatened [Torres] with physical harm if he refused to stop talking," and verbally assaulted Torres with "continuous expletives and unprofessional language to berate [Torres] in regards to his workers' compensation claim and decision to hire a lawyer."

In response, Defendants acknowledged that the managerial employees "became upset" but contended that all actions taken were "based on legitimate and non-retaliatory reasons or factors." Discovery ensued.

In October 2013, Defendants filed a motion for summary judgment and undisputed facts, asserting Torres was not legally authorized to work in the State of Tennessee or United States at the time he was terminated or when he filed the complaint.[1] In the attached memorandum

---

[1] On February 27, 2013, Torres became legally eligible to work in the United States.

of law, Defendants argued that Torres was "not capable of performing the job" because he was unable to establish that he was legally capable of working in the United States at the time of his discharge, and therefore, cannot maintain a claim for retaliatory discharge in Tennessee.

Torres responded, conceding that he cannot set forth facts that he was legally authorized to work in Tennessee or the United States while employed by Precision. However, Torres argues he is still entitled to pursue a retaliatory discharge claim against Defendants, irrespective of his immigration status.

On December 9, 2013, the trial court held a hearing on Defendants' motion for summary judgment in which attorneys for both parties presented arguments; the trial court reserved ruling on the motion at that time. On December 23, 2013, the trial court entered an order granting Defendants' motion for summary judgment and dismissing Torres' complaint. The trial court's order states as follows:

> The evidence is undisputed that the plaintiff was terminated after pursuing a worker's compensation claim against his employer, Precision Industries. However, the evidence is also undisputed that at the time of the termination, the plaintiff was not legally authorized to work in the State of Tennessee or the United States and was not granted eligibility to work until well after this lawsuit was filed.
>
> This Court is troubled by the termination of the plaintiff by the defendant for several reasons. First, there is a material dispute regarding the reason for termination. Secondly, this Court finds that the defendant likely knew of the plaintiff's illegal status as an employee. However, it appears to this Court that a plaintiff who claims retaliatory discharge but cannot show that he is capable of employment has no claim of retaliatory discharge under Tennessee law. Therefore, the Motion of Summary Judgment for the defendants is granted.

From this order, Torres appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Torres argues that the trial court erred in granting Defendants' summary judgment motion "based on a finding that [Torres] is not entitled to pursue a claim of retaliatory discharge after being terminated for claiming workers' compensation benefits solely because [Torres] is an undocumented worker." (Capitalization omitted).

A trial court's grant of summary judgment presents a question of law and is reviewed *de novo* with no presumption of correctness afforded to the trial court's determination. ***BellSouth Adver. & Publ'g Co. v. Johnson***, 100 S.W.3d 202, 205 (Tenn. 2003); ***Todd v. Shelby County***, 407 S.W.3d 212, 218 (Tenn. Ct. App. 2012). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. ***Godfrey v. Ruiz,*** 90 S.W.3d 692, 695 (Tenn. 2002); ***Figal v. Vanderbilt Univ.***, No. M2012-02516-COA-R3-CV, 2013 WL 5459021, at *11 (Tenn. Ct. App. Sept. 27, 2013).

## ANALYSIS

In this case, the trial court's sole basis for granting Defendants' motion for summary judgment was that Torres was an undocumented worker incapable of employment and, as a matter of law, could not bring a retaliatory discharge claim. In essence what the trial court held is that Torres lacked standing to pursue this claim based of his immigration status.[2] Therefore, in this appeal, we will focus on whether an unauthorized alien[3] has standing to pursue a retaliatory discharge claim against his or her employer, as this is the gravamen of this appeal and the arguments of the parties.

Standing is a judge-made doctrine, essential for a resolution on the merits of a legal controversy. ***Fannon v. City of LaFollette***, 329 S.W.3d 418, 424 (Tenn. 2010) (citing ***Am. Civil Liberties Union of Tenn. v. Darnell***, 195 S.W.3d 612, 619-21 (Tenn. 2006); ***Knierim v. Leatherwood***, 542 S.W.2d 806, 808 (Tenn. 1976); ***Mayhew v. Wilder***, 46 S.W.3d 760, 766-67 (Tenn. Ct. App. 2001)). "Courts employ the doctrine of standing to determine whether a particular litigant is entitled to have a court decide the merits of a dispute." ***Lynch v. City of Jellico***, 205 S.W.3d 384, 395 (Tenn. 2006). "The primary focus of a standing

---

[2] Though the trial court and the parties on appeal did not use the term "standing" in their analysis and arguments, we find that when examining the substance rather than form of parties' arguments, it is clear that Torres' "right to make a legal claim or seek judicial enforcement of a duty or right" is directly implicated. Black's Law Dictionary 1413 (9th ed. 2009) ("standing"); ***Abshure v. Methodist Healthcare-Memphis Hospitals***, 325 S.W.3d 98, 104 (Tenn. 2010) ("Reviewing courts should avoid construing pleadings in an artificial, technical sense [and] . . . give effect to the substance of the pleading rather than its form.").

[3] In this opinion, we will use the terms "undocumented worker," the term used by the trial court, "unauthorized alien," the term used by the Immigration Reform and Control Act of 1986 ("IRCA"), and "illegal alien," the term used by the Tennessee Legislature interchangeably. See 8 U.S.C. § 1324a (a)(1)(A); Tenn. Code Ann. § 50-1-103(a)(4). The IRCA defines "unauthorized alien" to mean "with respect to the employment of an alien at a particular time, that the alien is not at that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney General." 8 U.S.C. § 1324a (h)(3).

inquiry is on the party, not on the merits of the claims." *Mayhew*, 46 S.W.3d at 767; *see also City of Memphis v. Hargett*, 414 S.W.3d 88, 97 (Tenn. 2013) (citing *Darnell*, 195 S.W.3d at 620; *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767-68 (Tenn. Ct. App. 2002)). If a court determines a plaintiff lacks standing to pursue a matter, a defendant's motion for summary judgment should be granted and the matter dismissed. *State ex rel. Watson v. Waters*, No. E2009-01753-COA-R3-CV, 2010 WL 3294109, at *5 (Tenn. Ct. App. Aug. 20, 2010); *Phillips v. Cnty. of Anderson*, No. E2000-01204-COA-R3-CV, 2001 WL 456065, at *4 (Tenn. Ct. App. Apr. 30, 2001).

"In order to establish standing to sue, a plaintiff must establish the following elements by a preponderance of the evidence: (1) a distinct and palpable injury, rather than one that is conjectural or hypothetical; (2) a causal connection between the claimed injury and the challenged conduct; and (3) that the alleged injury is capable of being redressed by a favorable decision of the court." *Fannon*, 329 S.W.3d at 424 (citing *Darnell*, 195 S.W.3d at 620); *see also Jordan v. Knox Cnty.*, 213 S.W.3d 751, 764 (Tenn. 2007); *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't. of Nashville & Davidson Cnty.*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992).

In this case, the trial court granted summary judgment because Torres was not capable of legal employment and therefore could not assert a retaliation claim seeking to protect this employment. On appeal, Defendants reiterate that Torres was "denied something he had no legal right to in the first place" and therefore, cannot pursue an retaliatory discharge claim as a matter of law. Thus, our analysis must begin with whether Torres has an actual right that was affected and focus our standing inquiry on whether the injury Torres alleges is a "distinct and palpable injury, rather than one that is conjectural or hypothetical."

"The sort of distinct and palpable injury that will create standing must be an injury to a recognized legal right or interest." *City of Brentwood v. Metro. Bd. of Zoning Appeals,* 149 S.W.3d 49, 56 (Tenn. Ct. App. 2004). Rights or interests are often created or defined by statute or a rule of law; in cases where a party seeks "to vindicate a . . . right o[r] interest, the doctrine of standing requires the party to demonstrate that its claim falls within the zone of interests protected or regulated by the statute [or rule] in question." *City of Brentwood,* 149 S.W.3d at 56 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998); *Chattanooga Ry. & Light Co. v. Bettis*, 202 S.W. 70, 71 (Tenn. 1918); *Jefferson Cnty. v. City of Morristown*, No. 03A01-9810-CH-00331, 1999 WL 817519, at *6 (Tenn. Ct. App. Oct. 13, 1999)); *Pub. Employees For Envtl. Responsibility v. Tenn. Water Quality Control Bd.*, No. M2008-01567-COA-R3-CV, 2009 WL 1635087, at *7 (Tenn. Ct. App. June 10, 2009).

To determine whether Torres has a right to file a retaliation claim, we must look to what rights fall within the zone of interest a retaliatory discharge cause of action seeks to protect and then determine whether Torres, as an unauthorized alien, possesses such rights.

Looking to the origins of this cause of action in Tennessee is helpful in understanding the purpose behind retaliatory discharge claims. Years prior to the enactment of Tennessee Code Annotated § 50-1-801,[4] the Tennessee Supreme Court created an exception to the general rule that an at-will employee could be discharged by an employer for any reason, or no reason at all, in the context of workers' compensation claims. *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 444-45 (Tenn. 1984); *Goin v. Bass Pro Outdoor World, LLC*, 437 F. Supp. 2d 762, 765 (W.D. Tenn. 2006). In first recognizing the existence of a claim for retaliatory discharge in the workers' compensation context, the Tennessee Supreme Court explained as follows:

> [Tennessee] Workers' Compensation Law is a comprehensive scheme enacted to provide a certain and expeditious remedy for injured employees. It reflects a careful balancing of the interests of employer and employee. As the Indiana court stated, "the Act creates a duty on the employer to compensate employees for work-related injuries . . . and a *right* on the employee to receive such compensation." *Frampton v. Central Indiana Gas Co.*, 297 N.E.2d 425 at 427 (emphasis supplied).

---

[4]To all actions accruing after June 10, 2011, Section 50-1-801 sets forth the following procedure scheme applicable to retaliatory discharge claims:

> In any civil cause of action alleging wrongful discharge in violation of Tennessee public policy, including, but not limited to a discharge in retaliation for the exercise of rights under the Tennessee workers' compensation law, the plaintiff shall have the burden of establishing a prima facie case of retaliatory discharge. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the plaintiff's discharge. The burden on the defendant is one of production and not persuasion. If the defendant produces such evidence, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the plaintiff's discharge and that the stated reason was a pretext for unlawful retaliation. The foregoing allocations of burdens of proof shall apply at all stages of the proceedings, including motions for summary judgment. The plaintiff at all times retains the burden of persuading the trier of fact that the plaintiff has been the victim of unlawful retaliation or wrongful discharge.

Tenn. Code Ann. § 50-1-801 (2014).

> Retaliatory discharges completely circumvent this legislative scheme. Such discharges will have the effect of relieving the employer of its duty to compensate and the employee of his or her right to compensation. . . . In our opinion, a cause of action for retaliatory discharge, although not explicitly created by the statute, is necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intention of the legislature.

*Clanton*, 677 S.W.2d at 444-45; *see also* 2 *Larson's Workers' Compensation* § 104.07 (Desk Edition) (noting that the central principle emphasized in early retaliation cases "was that [workers' compensation acts] expressed a strong public policy that compensation should be available to injured workers [and] [i]f . . . an employer could with impunity coerce an employee into forgoing his or her rights, the employer could unilaterally defy and destroy the function of the act, and at the same time relieve itself of an obligation deliberately imposed on it by the legislature.").

Thus, though the workers' compensation statute did not expressly contain a retaliatory discharge provision, the Tennessee Supreme Court found the protection of workers' rights under the workers' compensation scheme was a clearly defined public policy which warranted the protection provided by an action for retaliatory discharge. *See Provonsha v. Students Taking a Right Stand, Inc.*, No. E2007-00469-COA-R3-CV, 2007 WL 4232918, at \*3 (Tenn. Ct. App. Dec. 3, 2007) (explaining that the origin of retaliatory discharge was based on recognition that "in limited circumstances, certain well-defined unambiguous principles of public policy confer upon employees implicit rights which must not be circumscribed or chilled by the potential of termination.") (quoting *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 (Tenn. 1997)). Thus, the Tennessee Supreme Court acknowledged an implicit cause of action must exist in order to prevent an employer from utilizing retaliatory discharge as a device to defeat the rights awarded to employees under the Tennessee Workers' Compensation Act. *Goin*, 437 F. Supp. 2d at 764-65 (citing *Harney v. Meadowbrook Nursing Center*, 784 S.W.2d 921, 922 (Tenn. 1990)); *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 556 (Tenn. 1993); Tenn. Code Ann. § 50-6-114 (2008).

Based on the clear policy goals espoused by the Tennessee Supreme Court, a retaliatory discharge cause of action was created, not to protect the right to work, but rather to prevent a chilling effect on employees asserting their rights under the Tennessee Workers' Compensation Act. *See* Tenn. Code Ann. § 50-6-108(a); *Young v. United Parcel Serv., Inc.*, No. 3:12-CV-0261, 2014 WL 199918, at \*17 (M.D. Tenn. Jan. 16, 2014).

Explained differently, a retaliation discharge action does not seek to protect a person's "legal claim to [a] job," but rather seeks to protect an employee's right to file a workers'

compensation claim if deterred by an employer's actions. Because retaliatory discharge is intended to protect an employee's right to file a workers' compensation action, as a threshold matter, we must look to whether an unauthorized alien such as Torres even has a right to file a workers' compensation claim.

In order to be eligible to receive workers' compensation in Tennessee, a person must qualify as an employee based on the statutory definition set forth in Tennessee Code Annotated § 50-6-102. *Lindsey v. Smith & Johnson, Inc.*, 601 S.W.2d 923, 925 (Tenn. 1980). Section 50-6-102 defines an "employee" for workers' compensation purposes as "every person, including a minor, whether lawfully or unlawfully employed . . ." Tenn. Code Ann. § 50-6-102(11)(A) (2014). Likewise, in Tennessee Code Annotated § 50-6-106, the legislature clearly delineated which specified categories of workers are not "employees" and would not be able to receive coverage under the Tennessee Workers' Compensation Act; notably absent from this list is the category of unauthorized aliens. *See* Tenn. Code Ann. § 50-6-106 (2014). Additionally, though referenced only in a memorandum opinion, the Tennessee Special Workers' Compensation Appeals Panel in interpreting the above statutes, has commented that, "The Tennessee Workers' Compensation Act does not contain a provision excluding illegal aliens from coverage under the Act." *Silva v. Martin Lumber Co.*, No. M2003-00490-WC-R3-CV, 2003 WL 22496233, at *2; 2003 Tenn. LEXIS 1047, at *5 (Tenn. Workers' Comp. Panel Nov. 5, 2003) (titled as a memorandum opinion)[5]. The *Silva* Panel went on to find that an unauthorized alien who presented falsified documentation of employment eligibility was an "employee" within the meaning of the Workers'

---

[5] We note the Tennessee Special Workers' Compensation Appeals Panel titled *Silva v. Martin Lumber Co.* as a "Memorandum Opinion" and leading legal databases have designated it as "not for publication." Typically, unpublished opinions of the Special Workers' Compensation Appeals Panel are "considered persuasive authority" in Tennessee Courts. *See* Tenn. Sup. Ct. R. 4(G) (2014) ("An unpublished opinion shall be considered controlling authority between the parties to the case . . . . Unless designated "Not For Citation," "DCRO" or "DNP" . . . , unpublished opinions for all other purposes shall be considered persuasive authority. Unpublished opinions of the Special Workers' Compensation Appeals Panel shall likewise be considered persuasive authority."). However, the designation of a case as a "Memorandum Opinion" in this Court usually signifies that the case is not to be published or cited by other courts in unrelated matters. *See* Tenn. Ct. App. R. 10 (2014) ("When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case."). While we are aware that the *Silva* Opinion is an opinion of the Tennessee Special Worker's Compensation Appeals Panel and not governed by the Rules of the Tennessee Court of Appeals, we note that permission to appeal to the Supreme Court was granted in *Silva*, and as a result, the Tennessee Supreme Court adopted and affirmed the Panel's findings of fact and conclusions of law and did not choose to designate the Opinion as "Not for Citation." *Silva v. Martin Lumber Co.*, No. M2003-00490-WC-R3-CV, 2003 Tenn. LEXIS 1048, at *1 (Tenn. Nov. 5, 2003); *see* Tenn. Sup. Ct. R. 4(E). This being the case, we consider the *Silva* Opinion as persuasive authority for purposes of this appeal.

Compensation Act, and therefore, entitled to workers' compensation benefits.[6] *Silva*, 2003 WL 22496233, at *2; 2003 Tenn. LEXIS 1047, at *6-7.

Thus, both the legislature and courts have found that an "employee" for workers' compensation purposes is anyone employed by another and works for wages or salary without regard to whether employment is legal or illegal. *Fed. Copper & Aluminum Co. v. Dickey*, 493 S.W.2d 463, 465 (Tenn. 1973) (noting that "employment which has been obtained by the making of false statements . . . , is still employment; that is, the technical illegality will not of itself destroy compensation coverage.") (quoting 1A *Larson's Workmen's Compensation Law*, § 47.53, at 800).

Because of the broad all-inclusive definition of employee in the Tennessee Workers' Compensation Act, we find that it is appropriate to include unauthorized aliens working for employers within the scope of this definition. *See* 2 *Larson's Workers' Compensation* § 66.03 (Desk Edition) (noting that states which provide coverage to persons whether lawfully or unlawfully employed and "have construed this type of statutory provision[,] have generally held that illegally employed aliens are covered by the act."). Therefore, we find Torres' immigration status would not prohibit him from exercising rights under the Tennessee Workers' Compensation Act to file and be compensated for a workplace injury. Having determined that unauthorized aliens have a right to file a workers' compensation claim, we must now consider whether the trial court erred in finding that Torres lacked the ability to protect this right by filing a retaliatory discharge claim against an employer allegedly seeking to infringe upon it.

Defendants present two arguments on appeal in support of their position that Torres should not be able to maintain a retaliatory discharge cause of action based on his immigration status. First, Defendants argue that Tennessee case law requires that Torres be capable of performing his job in order to maintain a cause of action for retaliatory discharge; and because he cannot legally do this, he should be precluded from bringing a claim. Secondly, Defendants contend that the legislature has expressed a clear policy in Tennessee that unauthorized aliens are prohibited from employment and to permit aliens to bring retaliatory discharge claims flies counter to these policy goals. We address each argument in turn.

On appeal, Defendants rely heavily on the 1985 case *Leatherwood v. United Parcel Service*, 708 S.W.2d 396, 402 (Tenn. Ct. App. 1985), contending that *Leatherwood* stands for the

---

[6] Since *Silva*, the legislature has revised the statutes defining "employee" and setting forth the categories of employees excluded from workers' compensation coverage many times and never modified either to make immigration status a relevant consideration. *See e.g.*, 2011 Tennessee Laws Pub. Ch. 422 (S.B. 1550); 2010 Tennessee Laws Pub. Ch. 1149 (S.B. 3591).

proposition that Torres must be able to show that he was capable of performing the job he held at Precision as a pre-requisite to bringing a retaliatory discharge claim, and his failure to do that should justify the trial court's grant of summary judgment. We have carefully reviewed *Leatherwood* and disagree that it stands for such a proposition or that an employee's ability to perform a job has any bearing on his or her standing to bring a retaliation discharge claim.

In *Leatherwood*, a plaintiff employee, upon returning from medical leave for injuries sustained on the job and having received workers' compensation while absent, informed his employer he was no longer physically able to perform his duties. *Id.* at 398. He claimed the employer was then uncooperative in providing other work for him, and the alternative work that the employer did provide, he was also physically unable to perform. *Id.* The plaintiff went on medical leave and was told his workers' compensation benefits would resume, but they did not resume until after a workers' compensation proceeding concluded almost a year later. *Id.* After claiming he was 100% disabled, but only receiving 50% permanent disability benefits in the workers' compensation proceeding, the employee then sued the employer, alleging the employer harassed and intimidated him to prevent him from exercising his rights and for discharging him in retaliation for making a workers' compensation claim. *Id.*

In response to the plaintiff's contentions, the Court stated that "[w]hile plaintiff's cause of action alleges retaliatory discharge, the allegations of facts in the complaints and the testimony of plaintiff are clear that his real grievance is that [employer] did not furnish him with some other job which he is physically able to perform." *Id*. at 401. The Court goes on to state that the employer did not have an obligation to provide the employee with another alternative job and did "not perceive the employer's failure to provide alternative employment as constituting retaliatory discharge within the meaning of the cause of action." *Id.* at 402. The Court reasoned that in every employment contract there is an implied condition "that both parties must be alive and capable of performing" and the plaintiff's acknowledgment that he could not perform the task he was initially hired to complete was inconsistent with his position that he was discharged for making his workers' compensation claim. *Leatherwood*, 708 S.W.3d at 402.

In this appeal, Defendants cling to the *Leatherwood* reasoning that an employee must be capable of performing the job from which he or she was terminated as a necessary prerequisite to even bringing a retaliatory discharge claim. We disagree, finding it distinguishable and the principles set forth in it inapplicable to whether or not Torres has standing to bring a retaliatory discharge claim.

First, *Leatherwood* dealt exclusively with an employee that was physically incapable of performing a job; Torres, on the other hand, was not legally capable of working, but as established above, could legally bring a workers' compensation claim.

Second, it does not appear that the *Leatherwood* court was even focused on a plaintiff's standing to bring a retaliatory discharge claim when discussing the employee's inability to perform. As exhibited by the court's comment that the plaintiff's grievance centered more on the employer's failure to provide the employee with alternative employment than retaliatory discharge, we find that it was more likely the *Leatherwood* court was attempting to explain why the plaintiff's claim was unsuccessful on the merits. When *Leatherwood* was decided, the retaliatory discharge cause of action in the workers' compensation context was merely a year old and uncharted in many ways. *See Clanton*, 677 S.W.2d at 444-45. With the hindsight of clearly defined burden shifting analyses and terms of art, it appears to us that the *Leatherwood* court was merely attempting to explain that the plaintiff's claim fails because the employee made statements to the employer and in pleadings that he could not perform the job, which were indicative of a legitimate non-discriminatory reason for the employee's termination. The court then went on to note the employer had no duty to provide alternative employment to the employee when he could not perform the job for which he was hired.

We recognize that physical inabilities or legal ineligibility could possibly serve as legitimate non-discriminatory reasons for termination, potentially rendering a retaliatory discharge claim unsuccessful; however, this is not the same as depriving a litigant of standing to bring the claim in the first place.[7] *See Jandreau v. Shaw's Supermarkets, Inc.*, 837 A.2d 142, 146 (Me. 2003) (noting that an employee's physical inability to perform her job was indicative of whether the employer had a legitimate business purpose for the termination and did not affect her standing to bring a retaliatory discharge claim); *Dunn v. Comcast Corp.*, 781 So. 2d 940, 943-944 (Ala. 2000) (finding that the requirement in a retaliatory discharge claim that an employee be "willing and able" to return to work was abolished) (relying on *Bleier v. Wellington Sears Co.*, 757 So. 2d 1163, 1171 (Ala. 2000), which stated that the "'willing-and-able' doctrine does not establish an element of an employee's prima facie case, but … the question whether an employee is willing and able to return to work is relevant to the defendant's opportunity to establish a defense to a claim alleging retaliatory discharge or to eliminate or reduce the damages recoverable for lost wages."); *Mullins v. Virginia Lutheran Homes, Inc.*, 479 S.E.2d 530, 532-33 (Va. 1997) (finding summary judgment inappropriate when presented with evidence that an plaintiff was terminated based on an injury that

---

[7] We note in our case, it does not appear Defendants assert that Torres' immigration status was the basis for his termination; nonetheless, the trial court found "there is a material dispute regarding the reason for termination" in this case and that summary judgment on this basis would not be appropriate.

-11-

rendered her unable to perform her job one month after filing a workers' compensation claim). This being the case, we find that Defendants' argument that Torres' inability to legally work for Precision should deprive him of his right to bring a retaliatory discharge claim is without merit.

In addition to arguments that Torres' legal ineligibility would bar a retaliation claim, Defendants also raise several policy concerns. Defendants claim that opening doors to allow undocumented aliens to pursue retaliatory discharge claims against employers would not be consistent with the established policy of the State of Tennessee and points to statutes criminalizing the employment of unauthorized aliens.

Though this is an issue of first impression in Tennessee, courts in federal jurisdictions have delicately balanced the competing goals of immigration laws, designed to deter unlawful immigration, and labor and employment laws seeking to prohibit unfair practices against all employees, including illegal ones. In so doing, courts have generally determined that unauthorized aliens can bring retaliation actions against employers under Title VII, the Fair Labor Standard Act, and the National Labor Relations Act. *See e.g., EEOC v. Restaurant Co.,* 490 F. Supp. 2d 1039, 1047, 1050 (D. Minn. 2007) (finding that an unauthorized alien would have standing to pursue federal civil rights claims under Title VII and rejecting the proposition that undocumented aliens are precluded from succeeding on retaliation claims simply because they are not qualified for employment); *Singh v. Jutla*, 214 F. Supp. 2d 1056, 1058-59 (N.D. Cal. 2002) (finding that an unauthorized alien has standing to bring an anti-retaliation claim under the FLSA for protected FLSA conduct) (citing *Patel v. Quality Inn South*, 846 F.2d 700, 704-05 (11th Cir. 1998), which explains that "the FLSA's coverage of undocumented aliens goes hand in hand with the policies behind the [Immigration Reform and Control Act] . . . If the FLSA did not cover undocumented aliens, employers would have an incentive to hire them. . . . By reducing the incentive to hire such workers the FLSA's coverage of undocumented aliens helps discourage illegal immigration and is thus fully consistent with the objectives of the IRCA."); *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 911; 104 S. Ct. 2803, 2819 (1984) (finding prior to the enactment of the IRCA that an illegal employee has standing to bring a claim under the NLRA for a retaliatory reporting due to a protected union activity).

Likewise, courts in Tennessee and across the country routinely permit unauthorized aliens to apprise themselves of the courts' jurisdiction when their rights are injured in other ways, including bringing causes of action in tort or in contract. *See e.g., Chopra v. U.S. Professionals*, *LLC*, No. W2004-01189-COA-R3-CV, 2005 WL 280346, at *2-3 (Tenn. Ct. App. Feb. 2, 2005) (involving breach of contract and fraudulent misrepresentation and finding a defendant's position that "an illegal alien has 'no standing in any Court in the United States' " was not supported); *Sillah v. Davis*, 252 F. Supp. 2d 589, 596 (W.D. Tenn.

2003) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). *See also Asylum Co. v. D.C. Dep't of Employment Servs.*, 10 A.3d 619, 633 (D.C. 2010) (citing *Bollinger Shipyards Inc. v. Dir., Office of Worker's Comp. Programs*, 604 F.3d 864, 878 (5th Cir. 2010) (reasoning that "it would not only be illogical but it would also serve no discernable purpose to accord illegal aliens the right to bring affirmative claims in tort for personal injury but deny them the right to pursue the substitutionary remedy for personal injuries sustained in the workplace."); 2 *Larson's Workers' Compensation Law* § 66.03[3][c] (Desk Edition) ("Given that illegal aliens are entitled to access to the courts and have the ability to file both contract and tort claims, it would seem illogical to bar illegal alien workers from seeking compensation benefits long considered a substitute for damages")).

Moreover, we find that depriving unauthorized aliens of an avenue to bring a retaliatory discharge claim could potentially increase the incentive of employers to hire illegal workers that they could terminate if a workers' compensation claim was filed. This defeats the goals and policies of the immigration laws and Tennessee Workers' Compensation Act. It also, decreases the burden on employers to provide and maintain a safe workplace, if an employer can easily escape paying workers' compensation for an injury by firing an unauthorized alien employee without consequence.

Based on this, we find that the ability to file a retaliatory discharge is a natural extension of what is already permitted in Tennessee and under other statutory schemes. We note that all remedies available to U.S. citizens may not be available to a successful unauthorized alien litigant; however, we need not address the issue of damages available to unauthorized aliens in Tennessee at this time, as merely standing is at issue in this appeal and the trial court has yet to adjudicate Torres' claim on the merits.[8]

---

[8] Some damages available to U.S. citizens succeeding in labor and employment claims have been determined to be unavailable to unauthorized aliens. Most notably in *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137 (2002), the United States Supreme Court held that a undocumented alien would not be permitted to receive backpay under the National Labor Relations Act, as it violated immigration policies. The *Hoffman* court reasoned that an unauthorized alien seeking the remedy of back pay "cannot mitigate damages, a duty our cases require, . . . without triggering new IRCA violations." 535 U.S. at 150-51. However, we point out that Tennessee courts have explained that *Hoffman* "did not foreclose 'traditional remedies' sufficient to effectuate national labor policy regardless of whether the 'spur and catalyst' of backpay accompanies them"; thus, leaving available other forms of redress an illegal immigrant may be entitled in that context. *Chopra v. U.S. Professionals*, *LLC*, No. W2004-01189-COA-R3-CV, 2005 WL 280346, at *3 (Tenn. Ct. App. Feb. 2, 2005). *See also Singh v. Jutla*, 214 F. Supp. 2d 1056, 1061 (N.D. Cal. 2002) (declining to extend *Hoffman* to bar compensatory and punitive damages, reasoning that *Hoffman* did not preclude an undocumented worker from seeking any other form of relief, as shown through the *Hoffman* court's granting of both injunctive and declaratory relief).

Therefore, finding the reasoning espoused by *Leatherwood* and the policy arguments Defendants assert to be unpersuasive, we conclude that the trial court's grant of summary judgment in reliance upon a theory that an employee must "be capable of employment" in order to have a claim for retaliatory discharge under Tennessee law is not sufficient to bar an unauthorized alien from bringing a claim of retaliatory discharge against an employer to protect his or her right to file a claim for workers' compensation. This being the case, we reverse the decision of the trial court and remand for further proceedings.

All other issues raised on appeal are pretermitted by this decision.

### CONCLUSION

The decision of the trial court is reversed and remanded for further proceedings consistent with this Opinion. Costs on appeal are assessed against Defendant/Appellees Precision Industries, Terry Hedrick, and Vicki Hedrick, for which execution may issue if necessary.

_____
PAUL G. SUMMERS, SENIOR JUDGE